The action was brought to recover $469.40 as damages for refusing to receive a certain lot of potatoes which, it is alleged, the defendants contracted to buy. The case was here before, and is reported in 172 N.C. at p. 1. The defendants, who failed in the former appeal, have amended their original answer and asked (238) *Page 256 
for a reformation of the contract, dated 25 October 1912, which provided that plaintiffs should ship under it, and deliver to the defendants at Elizabeth City, 800 sacks of Cobblers and 200 sacks of White Bliss potatoes, at prices named, they "to be of the best quality shipped from Aroostook County, State of Maine, by the plaintiffs," while defendants allege that plaintiffs contracted to sell and ship to them "one hundred bags of seed potatoes of the same quality and kind which the defendants had purchased through Mr. Corey the year before." Defendants further allege: "That said order of the defendants was sent to plaintiffs in a letter on or about 22 October, 1912, and the receipts of the order was acknowledged by the plaintiff in a letter dated 25 October, 1912; that these two letters contained the true contract between the parties, and that it was clearly understood and agreed between the parties that the potatoes so bought by the defendants and sold by the plaintiffs should be the same kind and quality that the defendants had bought from Mr. Corey the year before, but through mutual mistake, or the mistake of these defendants, induced by the fraud of the plaintiffs, who sent the paper, `Exhibit A,' to the defendants in a letter acknowledging receipt of this order, and accepting it, and represented that `Exhibit A' covered the contract which had been made between the parties, these defendants signed the said `Exhibit A'; that these defendants signed the said exhibit through mistake, fully believing that the language in said contract that the potatoes should be the best quality shipped from Aroostook County by the first party covered and was intended to guarantee to them the quality of potatoes they had obtained from Mr. Chorey the year before, and that the plaintiffs wrongfully, unlawfully and fraudulently misled the defendants into this belief, and wrongfully, unlawfully and fraudulently induced the said defendants to sign the `Exhibit A' under the mistake and belief that they were buying the same quality and kind of potatoes they had purchased the year before from Mr. Corey, who was conducting this correspondence for the plaintiffs, and these defendants would not have signed the said `Exhibit A' but for this mistaken belief." Defendants then ask for judgment that the contract be corrected accordingly, so that it will express the true agreement as they have alleged it. The jury returned the following verdict:
1. Was it agreed between the plaintiff and defendant at the time of the sale of the potatoes in question that said potatoes should be just as good as those purchased by defendant through D. W. Corey the previous year? Answer: Yes.
2. If so, was said provision omitted from the written contract, Exhibit A, by the mutual mistake of the parties or the mistake of defendants, induced by the fraud of the plaintiff? Answer: Yes. *Page 257 
3. Was the plaintiff ready, able and willing to comply with its contract, as alleged? Answer: No. (239)
4. Did the defendants wrongfully refuse to take the potatoes and pay for the same? Answer: No.
5. What damage, if any, is the plaintiff entitled to recover? Answer: Nothing.
Judgment was entered on the verdict, and the plaintiffs appealed.
There are numerous errors assigned by the plaintiffs, nearly all of them relating to the issues, evidence and the charge. We will consider themseriatim and in the order they are presented.
1. The first exception refers to the contents of the letter dated 22 October, 1912, which had been lost, and we do not see why the evidence was not competent to prove what was in it, and especially as the letter of 25 October, 1912, was an answer to it, and indicated what was its contents. The object in proving the contents of the letter dated 22 October was to show that defendants had ordered potatoes of the kind and quality described in their amended answer — that is, the kind which were of the same quality as those which had been ordered by them from the plaintiffs, through Mr. Corey, the year before. It bears directly upon the main issue, concerning the mistake in the contract. The original writing is always the best evidence of its contents, and its production is required by the law, if the paper can be had, but when it is lost or the adverse party fails to produce it when notified to do so, parol evidence of its contents then becomes competent, as it is the best that is obtainable.
McKelvey on Evidence (2d Ed.), pp. 429, 430, and 431, secs. 273 and 274. It may be said, in this connection, that the sixth exception was properly overruled, as the letter, known as Exhibit D, was in itself evidence as to the contents of the lost letter, or at least is intimately connected with it in a material respect and throws light upon the issues. It also forms a part of the general correspondence between the parties.
2. The next six exceptions are untenable, as the evidence was relevant to the question of damages, whether the contract was or was not reformed. It was clearly admissible for the purpose of showing the condition and quality of the potatoes which were delivered to the defendants; and as to the twelfth exception, or that part of it referring to the offer of compromise, it was competent to show *Page 258 
why the offer was made, and that it was not an admission of liability for any portion of the sum claimed by the plaintiffs. If this was not true, it was harmless, as the offer was not accepted. The exception is further objectionable in form, as it does not (240) specify the particular part of the evidence which is incompetent, there being more than one subject embraced by it. If the exception was addressed to that part which relates to the compromise, and this seems to be the case, we have already dealt with it. It is stated in the thirteenth exception that the court admitted the evidence as to the compromise in answer to plaintiffs' testimony. It also appears by the letter of 18 February, 1913, that plaintiff also offered to settle on a basis that caused it a loss of about $160. The court properly admitted sections 5 and 6 of the answer, as plaintiffs had used in evidence the corresponding sections of the complaint and only fragmentary parts of sections 5 and 7 of the answer. Defendants were entitled to the whole, as the other parts of the two sections of the answer were explanatory of the parts introduced by the plaintiffs.
3. The next eight exceptions, including the twenty-second, relate to the value of the potatoes and their condition, and more especially to the difference in quality from those sold to defendants and other customers in 1912. The question of damages is included within the scope of the pleadings, as well as that of reformation of the contract. It also may be said that this evidence, or a large part of it, was corroborative of the defendants' testimony.
4. The court is not required to adopt any particular form of issues, so that those submitted embrace all essential questions in controversy, and each party has an opportunity to present fairly and fully his contentions, both as to fact and law. We said, in Clark v. Guano Co., 144 N.C. 64: "The court below need not submit issues in any particular form. If they are framed in such a way as to present the material questions in dispute, and so as to enable each of the parties to have the full benefit of his contention before the jury, and a fair chance to develop his case, and if, when answered, the issues are sufficient to determine the rights of the parties and to support the judgment, the requirement of the statute is fully met," citing Hatcher v. Dabbs, 133 N.C. 239; Falkner v. Pilcher,137 N.C. 449; Jackson v. Telegraph Co., 139 N.C. 347. To the same effect isCunningham v. R. R., ib., 427; Wilson v. Cotton Mills, 140 N.C. 53. In the very recent case of Power Co. v. Power Co., 171 N.C. at p. 258, we said: "Issues are sufficient when they submit to the jury proper inquiries as to all the essential matters or the determinative facts of the controversy.Zollicoffer v. Zollicoffer, 168 N.C. 326; *Page 259 Hatcher v. Dabbs, 133 N.C. 239. The form of the issues is of little or no consequence if those which are submitted to the jury afford each party a fair chance to present his contention in the case, so far as it is pertinent to the controversy. Carr v. Alexander, 169 N.C. 665. Issues should be framed upon the pleadings and not upon the evidence. Goins v.Indian Training School, 169 N.C. 736."
We have paused to consider this matter again, as there seems to be some misunderstanding in regard to it, the (241) same exception appearing in many appeals to this Court. Of course, issues must be so framed as, when answered by the jury, they will form the basis of a judgment settling the controversy. If they are defective in this respect, so that judgment cannot be rendered upon them, it is ground for reversal, but if otherwise it is not, as the cases cited above will show. In this case the issues accepted by the court, and to which the jury have responded, cover the whole ground, and afforded the plaintiff a fair opportunity to present his case fully and without any hindrance or prejudice, and the court properly rejected the issues tendered by the plaintiffs, as the others were those made by the pleadings and were coextensive with the controversy.
5. The other exceptions, not considering those which are merely formal, were taken to the charge of the court. After reading it carefully, we do not see how instructions could more distinctly and clearly, and with greater fullness, have presented the case to the jury in all of its phases. It surely stated correctly the law bearing upon the issues, as it "arose upon the evidence," and an intelligent jury could not have misunderstood it. Whether the plaintiffs were ready, able and willing to comply with the true contract was an issue of fact, proper only for the jury, there being evidence, as we think, to support the finding on the third issue, and strong evidence, too. The burden as to this issue was properly laid upon the plaintiffs.
6. There were no prayers for instructions, and no motion to nonsuit. If the plaintiffs wanted fuller or more pertinent instructions, they should have requested them. Simmons v. Davenport, 140 N.C. 407, and other cases cited under it in Lyon's Digest, p. 33. But we will assume, as suggested in plaintiff's brief, that a motion to nonsuit was made and refused, which would raise the question whether there was any evidence of mistake in the contract, as alleged in the answer and mentioned in the first two issues. We are of opinion that there was. It is of no consequence in deciding this question that the instrument was read by the parties. Penfield v. Villageof New Rochelle, 45 N.Y.S. 460 (aff. in 160 N.Y. 697); Bush v.Hicks, 60 N.Y. 697; Bush v. Hicks, 60 N.Y. 298; 34 Cyc. 99; West v. Suda,69 Conn. 60. It is said in the Penfield case that *Page 260 
the fact, if it be a fact, that the parties, or either of them, read the deed proposed to be corrected, does not affect the right to have it reformed if they mistakenly believed that it expressed the terms of the actual contract between them, or corresponded therewith. The mistake must be common to both parties to the transaction, or induced by the fraud of one and the mistake of the other (Wilson v.Land Co., 77 N.C. 445), and may occur either in the formal statement of their agreement in the instrument, or in some matter causing the agreement to be made, or to which it is to be applied. (242) Kerr F. M., p. 416; Leake on Contracts, p. 172. If both parties were mistaken, equity will adjust the form of expression to the true agreement, or if one of the parties has, by misrepresentation or other wrongful conduct, misled the other, and especially when it was done for the purpose of obtaining the contract, his act may amount to fraud, and equity will aid the injured party in rectifying the mistake. Kerr on F. M., pp. 412 and 413, as to the evidence sufficient to show the mistake: "By the general rule of the common law, if there be a contract which has been reduced into writing, verbal evidence is not allowed to be given of what passed between the parties, either before the written instrument was made or during the time it was in a state of preparation, so as to add or subtract from or in any manner to vary or qualify the written contract. A court of equity, however, admits such evidence, whether the purpose of the suit be to rectify or rescind an agreement."
In Wendt v. Diemer, 9 Kansas App. 481, it is said: "In the trial of such cases, where one of the principal questions is to determine what were the actual terms of the contract as agreed upon by the parties, it is not error for the court to permit one of the parties in giving his evidence to tell all that was said at the time the contract was made between the parties, and also to state incidentally what was said by a third party who assisted in making the contract, although his interest therein, if any, does not appear." Kerr on F. M., 415 and 416. And in 34 Cyc. 980, 981, and notes, where it is said, in regard to the proof of a material mistake in a deed or contract: "The general rules of evidence govern as to competency, materiality, relevancy, and such other qualifications as make facts admissible in proof. Anything which shows the intention or actual contract of the parties is material, and any evidence which goes to show the real intention of the parties is admissible, whether it be by way of conduct or documentary in nature. . . . Evidence must not be too remote, however, but in support of the issue. It should also be contemporaneous with or anterior to the instrument intended to be reformed. . . . It is competent to prove the mistake by *Page 261 
admissions of the parties, original instructions, and the testimony of the attorneys connected with the execution of the instrument." It is also stated there that the great mass of authorities have adopted what is considered to be the general rule, that parol evidence is admissible to show mistake or fraud. Ib., p. 982. While negotiations leading up to the execution of the contract are merged in it at law, they are competent in equity to show what was the real agreement, for the purpose of correcting the instrument and doing justice.Robinson v. Willoughby, 65 N.C. 520; Ins. Co. v. Boyle, 21 Ohio St. 119;Place v. Johnson, 20 Minn. 219, and especially Jones v.Warren, 134 N.C. 390. The Court held in Arthur v. McLure, (243)166 N.C. 140 and 143:
"1. Equity will reform a written instrument when such is necessary to make it express the intention of the contracting parties, which by reason of mutual mistake or the mistake of the draftsman it fails to do if no intervening or superior equities of third persons have arisen by reason of the mistake, this not coming within the rule that parol evidence will not be received to vary the terms of a written contract.
"2. It is required that the proof of the mistake be clear, strong and convincing, where a written contract is sought to be reformed, the burden of proof being on the party seeking the equitable relief, and the question as to whether the proof meets this requirement is one for the jury, and not for the court, to decide.
"3. The doctrine is elementary that parol evidence is not, in general, admissible between the parties to vary a written instrument, but it is equally well settled that mistake, fraud, surprise, and accident furnish exceptions to the general principal, and parol evidence, in any case brought within one of the exceptions, is admitted to vary the writing so far as to make it accord with the true intention and agreement of the parties. These exceptions rest upon the highest motives of policy and expediency, or otherwise an injured party would generally be without remedy."
So it was held in Knapp v. White, 23 Conn. 529, that letters written by the parties during negotiations for the purpose of making the contract are competent in equity to show that it was, and that it was mistakenly written, where reformation of it is sought by the complainant. And inMorrison v. Jones, 31 Mont. 154, a concurrently executed instrument tending to show the true character of a deed, as intended to be a mortgage. In VanTuey v. W. F. Ins. Co., 55 N.Y. 657, the Court, in an action to reform a policy, admitted parol evidence to show that it was to conform to the policies of a certain other company, and also admitted a policy of that company, in order to correct the policy in suit, so that it would agree *Page 262 
with it. Referring to the quantum of proof, it has been said: "What constitutes such clear, satisfactory and sufficient evidence as to make the case go one way or the other, depends upon the character of testimony, the coherency of the entire case, and the force of documents, circumstances and facts introduced. 34 Cyc., pp. 984, 985, 986."
If we examine the proof before us in the light of these authorities, there can be no doubt that there was sufficient evidence for the jury to pass upon. Of course, we refer the question of the quantum
of proof to the jury, after they are instructed that it must be clear, strong and convincing. Lehew v. Hewett, 138 N.C. 6; King v. Hobbs, 139 N.C. 171; White v. Carroll, 147 N.C. 334; Gray v. Jenkins, (244) 151 N.C. 82. It was said in Sills v. Ford, 171 N.C. at p. 736: "There was sufficient proof of the mistake for the consideration of the jury (King v. Hobbs, 139 N.C. 171), whether it was clear, strong and convincing being a question for the jury."Lehew v. Hewett, supra.
The letter of 25 October, 1912, from the plaintiffs to the defendants, refers to the letter of the 22d of the same month as having been received, and then states: "We have booked your order for 1,000 sacks seed potatoes." It further says: "I remember well the stock you got last year. It was grown on the College Seed Farm. We had 25 acres on same farm this year, and grew 2,995 barrels. . . . I know what you want, and we have it. . . . We can spare you any part of 2,000 more Cobblers, just as good as you had last year, if unsold, when we hear from you. . . . We enclose contract for 1,000 sacks. Please execute and return copy to us." (Italics ours.) The proof shows the contents of the lost letter of 22 October, 1912, and that it ordered seed potatoes of the kind described in defendants' amended answer. This order, as the letter of 25 October shows, was accepted, or "booked." The contract was signed and returned by defendants in their letter of 3 November, 1912, and the receipt of it is acknowledged in plaintiffs' letter of 7 November, 1912, which stated: "Yours 3d, enclosing contract for 1,000 sacks of potatoes, signed. Note you can use more, but my price is too high. My price is not too high for what you want. . . . I can spare you 500 to 700 more good ones if unsold, when I hear from you, at the same price. . . . I shipped you potatoes last year when I could have taken $1 a sack more. We have booked your order and can carry them ourselves." In addition to the letters, there was much oral evidence as to the terms of the defendant's offer to buy seed potatoes made in the lost letter of 22 October, 1912, which would be clear, strong and convincing to us if we had to pass upon its weight and sufficiency, and the letters impart to it a well-nigh conclusive force. *Page 263 
The defendants, even if they read the contract, might naturally have been misled by its language. "The best potatoes shipped from Aroostook County" might also have been of the same kind and quality as those that the defendants had bought from Mr. Corey the year before, and the mistake as to the meaning would be one of fact and not one of law. It is perfectly evident that plaintiff either intended the defendants to so understand the contract, or if they did not, there is evidence in the papers, as well as outside, that they intended to mislead them and commit a deception which is equivalent to a fraud. Plaintiff's selection of either horn of this dilemma will not affect the result. We believe that the contract could be reformed upon the documentary evidence alone, if we were sitting as chancellors, and not merely dealing with the verdict of a jury. The letter of 22 October, 1913, was clear in its terms, as shown by the witnesses, and distinctly ordered potatoes of the kind bought (245) by defendants in 1912, and the letter of 25 October, 1913, in which the contract was enclosed, promised to sell to defendants any part of a lot of 2,000 sacks "just as good as you had last year." Unless the plaintiff intended to deceive that defendants, this letter meant that the enclosed contract complied with the terms of the promise made in the letter enclosing it, and was, therefore, calculated to impress defendants with the belief, when they signed the contract, that it corresponded with the promise. There are other considerations and circumstances which justify our conclusion that Judge Daniels committed no error at the trial.
No error.
Cited: Boone v. Lee, 175 N.C. 384; Alexander v. Cedar Works,177 N.C. 149; Futch v. R.R., 178 N.C. 284; Bank v. Pack, 178 N.C. 390;Buchanan v. Furnace Co., 178 N.C. 655; Brown v. Hillsboro, 184 N.C. 375;McLawhorn v. Coppage, 188 N.C. 457; Sams v. Cochran, 188 N.C. 734; Crawfordv. Willoughby, 192 N.C. 271; Murphy v. Power Co., 196 N.C. 494; Bank v.Bank, 197 N.C. 532; Waters v. Waters, 199 N.C. 668; Furr v. Trull,205 N.C. 419; Ins. Co., v. Edgerton, 206 N.C. 408; Oliver v. Hecht,207 N.C. 485; Baushar v. Willis, 210 N.C. 52; Ollis v. Bd. of Ed.,210 N.C. 493; Henley v. Holt, 214 N.C. 387; Farmers Fed., Inc. v. Morris,223 N.C. 469; Whiteman v. Transportation Co., 231 N.C. 705; Turnage v.McLawhon, 232 N.C. 516; Lawrence v. Heavner, 232 N.C. 560; S. v. Smith,237 N.C. 20; O'Briant v. O'Briant, 239 N.C. 103; Darroch v. Johnson,250 N.C. 313; Rudd v. Stewart, 255 N.C. 94; Baker v. Construction Corp.,255 N.C. 308. *Page 264 
(246)