MAGGIE C. DARROCH v. HAROLD E. JOHNSON, WINFRED CHALMERS AND BURNETT CHALMERS.
AND
ALICE H. COLVILLE v. HAROLD E. JOHNSON, WINFRED CHALMERS AND BURNETT CHALMERS.
AND
A. K. DARROCH v. HAROLD E. JOHNSON, WINFRED CHALMERS AND BURNETT CHALMERS.

(Filed 20 May, 1959.)

**1. Appeal and Error § 38—**

Assignments of error not brought forward in the brief are deemed abandoned. Rule of Practice in the Supreme Court No. 28.

**2. Trial § 36—**

The issues arise upon the pleadings only.

**3. Automobiles § 35— *Complaint held to allege joint and concurring negligence.***

The complaints alleged that plaintiffs were guests in an automobile, traveling westwardly at a lawful speed on its right side of the highway, that two cars traveling easterly, close together, approached on a curve at excessive speed, that the first car was partly to the left of the center of the highway and sideswiped the car in which plaintiffs were riding, and that immediately thereafter it was struck by the second car, which was also partly over its center of the highway. *Held:* The allegations are sufficient to support the averments that plaintiffs were injured by the joint and concurring negligence of the drivers of the east-bound cars and to support the submission of an appropriate issue thereon.

**4. Negligence § 6—**

An injury may be the result of separate and distinct proximate causes acting independently of each other if they join and concur in producing the result complained of.

**5. Automobiles § 43: Negligence § 21—**

In an action alleging the joint and concurring negligence of two

drivers as the proximate cause of plaintiffs' injuries, there being no conflict in the evidence as to the negligence of one of the drivers, the submission of an issue as to whether plaintiffs' injuries were the result of the joint and concurring negligence of both defendants enables the other defendant to present his contentions that he was not negligent or that his negligence was not the proximate cause of the injuries, and his objection to the form of the issue cannot be sustained.

**6. Automobiles § 46—**

The charge of the court in this case on the aspect of joint and concurrent negligence and proximate cause *held* without error.

**7. Automobiles § 38—**

Testimony of witnesses, who had observed a car approaching for a distance of some 75 to 100 yards, that the car was traveling at a speed of 60 miles per hour or more, is competent, its weight and credibility being for the jury.

APPEAL by defendant Harold E. Johnson from *Thompson, Special Judge,* September Civil Term 1958 of HARNETT.

These actions were instituted individually by Maggie C. Darroch, Alice H. Colville and A. K. Darroch, to recover for personal injuries alleged to have been sustained as the result of motor vehicle collisions by reason of the joint and concurrent negligence of the defendants, which collisions occurred on Highway No. 27, near Pineview School, in Harnett County, North Carolina, on 9 September 1956.

The plaintiffs were passengers in a 1956 Mercury automobile being driven by the owner, James Colville, westwardly along Highway No. 27, near Pineview School. The plaintiff A. K. Darroch was riding in the front seat with the driver; the plaintiffs Maggie C. Darroch and Alice H. Colville were riding in the rear seat. Two children, eight and sixteen years of age, were riding in the middle of the front and rear seats. The plaintiffs Darroch are husband and wife; the plaintiff Colville is the wife and Maggie C. Darroch the sister of the owner and driver of the vehicle.

The complaints of the respective plaintiffs are substantially the same and, by consent of the parties, the cases were consolidated for trial.

About 1:30 p.m. on 9 September 1956 the Mercury automobile in which the plaintiffs were riding was proceeding in a westwardly direction when on a curve in the road it met the vehicles of the defendants, a 1941 Ford automobile owned by the defendant Burnett Chalmers and being operated at the time by the defendant Winfred Chalmers (neither of whom filed answers in these actions), and a 1956 Ford automobile owned and operated by the defendant Johnson. Both of these automobiles were proceeding in an easterly direction.

The evidence of the plaintiffs tends to show that the Mercury automobile was traveling about 40 to 45 miles per hour, on its right side of the road; that the cars of the defendants came around the curve "very close together"; that the 1941 Ford was leading, being followed closely by the 1956 Ford; that as the 1941 Ford came around the curve it crossed over the center line or partly into its left lane and sideswiped the Mercury automobile (the defendant Johnson's evidence is also to this same effect); that the Mercury automobile moved partly onto the shoulder of the road in an attempt to avoid being hit; that after the Mercury was sideswiped by the 1941 Ford, the Mercury and the 1956 Ford collided. The 1941 Ford, after sideswiping the Mercury, proceeded a short distance and overturned.

The plaintiffs' evidence further tends to show that in the collision with the 1941 Ford the plaintiffs were not personally injured; that their personal injuries were inflicted in the collision between the Mercury automobile and the 1956 Ford automobile.

The evidence is sharply conflicting as to where on the road the collision between the Mercury and the 1956 Ford actually occurred. Plaintiffs' evidence tends to show that the Mercury traveled only about two and one-half car lengths after being sideswiped by the 1941 Ford; that the 1956 Ford was also across the center line (its left side of the road) by as much as eighteen inches to two feet when it and the Mercury collided; that the Mercury automobile was moving very slowly at the time; that the collision knocked the Mercury across the road into the lane for eastbound traffic and that the Mercury and the 1956 Ford came to rest facing east; that the front of the Mercury car was resting on the highway, slightly over the center line, in the eastern lane.

The plaintiff A. K. Darroch and the witness James Colville were allowed to testify, over the objection of the defendant Johnson, that the two Ford automobiles were traveling in excess of 60 miles per hour as they were coming around the curve. Plaintiff A. K. Darroch testified: "I was riding with James Colville * * * in the front seat on the right-hand side when we were involved in the collision. * * * the road was practically straight where we were at the time. There was a curve up the road ahead of us approximately 75 yds. The curve was to our left. I viewed two cars coming around this curve at a terrific rate of speed, facing us. Just as they drove around the curve, they went across the line to our side of the road, and the first car sideswiped the left-hand fender and light of our car, went on past us, and turned over. Right after the first car struck us, the second car hit us — ca-bam! * * * This other car hit us right head-on, right directly behind the first

car. When the second car hit our car * * * it knocked it clean around to our left. At the time our car was hit by the second car, our car was to the right of the center line; we were to the right all the time."

The defendant Johnson's evidence tends to show that he was traveling some 75 to 100 yards behind the 1941 Ford; that when he saw the 1941 Ford and the Mercury collide he slowed down; that he was at all times on his right side of the highway; that the Mercury was across the center line at the time of the second collision.

The witness Ward, a State Highway patrolman, testifying for the defendant Johnson, gave a description of the physical facts at the scene of the collision, including a statement that a trail of oil led from the "north lane into the south lane" in a southwesterly direction (that is, from the Mercury's lane of travel to the 1956 Ford's lane of travel). On cross-examination this witness testified that in his interrogation of the defendant Johnson at the hospital after the wreck, Johnson said "he was trying to catch that '41 Ford. He told me how far he had been chasing it. There was a store back up the road — I don't know the distance — they were at the store when the car came by. He told me he had been chasing that car from that store to where the impact was. He was rational, sober, when he talked to me. * * * He came by the store * * * there were two or three colored boys with Johnson. There were two in Johnson's car I know of. * * * The colored boy (said) 'There goes my car. Let's catch it.' They got in the car and they were in the process of catching the car when the wreck happened."

The testimony of the defendant Johnson reveals that the defendant Burnett Chalmers was picked up at the store when Johnson and his companions, Odell Doby and Elbert Hall, left there. Burnett Chalmers was the owner of the 1941 Ford that was being driven by Winfred Chalmers at the time of the wreck.

Elbert Hall, a witness for the defendant Johnson, testified on cross-examination that the 1941 Ford had been gone about five minutes when they left the store; "I next saw the Ford at Johnsonville colored school. * * * Johnson started to stop. The colored boy in the back wanted to get his car * * *. At the time we came up on Chalmers at the school house he was not going as fast as we were going. * * * We came within 150 yards of it * * *. The guy in the back wanted to get his car; that was his intention of wanting to ride that far with us. At Johnsonville school is where he said the boy would probably go to, his brother not having any operator's license; he said he was intoxicated and he would like to get his car before he killed someone or himself."

At the trial the defendant Johnson testified that he was not racing or trying to catch the 1941 Ford; that he did not know who owned the 1941 Ford until after the wreck.

The cases were submitted to the jury against Winfred Chalmers and Harold E. Johnson only, and the jury was instructed not to consider any allegations against Burnett Chalmers.

The defendant Johnson tendered the following issues which were refused: "1. Was the plaintiff injured by the negligence of the defendant Johnson, as alleged in the complaint? 2. What amount of damages is the plaintiff entitled to recover?"

The following issues were submitted in each case: "1. Was the plaintiff injured by the joint and concurrent negligence of the defendants Winfred Chalmers and Harold E. Johnson, as alleged in the complaint? 2. What amount of damages, if any, is the plaintiff entitled to recover?"

The jury answered the issues in favor of the plaintiff in each of the three cases and judgments were entered accordingly.

The defendant Johnson appeals, assigning error.

*Edgar R. Bain and Wilson & Johnson for appellees.*
*Dupree & Weaver and Walter Lee Horton, Jr., for appellant.*

DENNY, J.  The defendant sets out in the record on this appeal forty-four assignments of error based on forty-five exceptions. However, he has not brought forward in his brief assignments of error Nos. 3, 4, 7 through 14, 39, 41 and 42. Hence, these assignments of error and the exceptions upon which they are based are deemed abandoned. Rule 28, Rules of Practice in the Supreme Court, 221 N.C. 562; *Harmon v. Harmon,* 245 N.C. 83, 95 S.E. 2d 355.

Assignments of error Nos. 15 and 16 are directed to the refusal of the court to submit the issues tendered by the appellant and to the issues submitted by the court.

It is well settled that issues arise upon the pleadings only and not upon the evidential facts. G.S. 1-200; *Nebel v. Nebel,* 241 N.C. 491, 85 S.E. 2d 876; *Wells v. Clayton,* 236 N.C. 102, 72 S.E. 2d 16; *Howard v. Early,* 126 N.C. 170, 35 S.E. 258; *Fortesque v. Crawford,* 105 N.C. 29, 10 S.E. 910; *Wright v. Cain,* 93 N.C. 296; *Miller v. Miller,* 89 N.C. 209; *McElwee v. Blackwell,* 82 N.C. 345.

In the instant cases there can be no doubt about the pleadings in each case being so cast as to allege that the respective injuries sustained by each of the plaintiffs "were due to and were the direct result of the joint and several negligent acts of the defendants which

concurred and combined to proximately cause the injuries sustained by the" respective plaintiffs.

The complaint in each case sets out in detail the acts of the respective defendants Winfred Chalmers and Harold E. Johnson, which each plaintiff alleges "combined and concurred and proximately caused and produced said collision and the injuries therein sustained by this plaintiff, and that by reason of the joint and concurring negligence of said defendants the plaintiff has been seriously and permanently damaged and injured * * *."

In the case of *Barber v. Wooten*, 234 N.C. 107, 66 S.E. 2d 690, the plaintiff was a passenger in a car operated by one McHorney, which was being driven southwardly on Highway No. 170, in Currituck County. Another car operated in the opposite direction by W. M. Wooten ran head-on into the McHorney car. This collision, the plaintiff alleged, "set into sequence a chain of events * * * which proximately resulted in injuries to the plaintiff." Immediately following the first collision in which plaintiff suffered some injury, a Dodge truck driven by Adam Layden negligently ran into the rear of the McHorney car and knocked it sidewise on the road, inflicting additional injuries. Shortly after the Layden collision and while McHorney's car was immobile on the right-hand side of the highway, Clyde C. Scaff, driving a 1949 Ford convertible southwardly along the highway, negligently ran into the side of McHorney's car, inflicting additional injuries to plaintiff.

The complaint alleged that all three of the defendants were jointly, concurrently and successively negligent in proximately causing the injuries to the plaintiff. Separate demurrers were filed by the defendants for dual misjoinder of parties and causes of action. The demurrers were overruled and they appealed. The appellants took the position that the negligence of Wooten came to an end before the Layden truck struck the McHorney car and that the negligence of both Wooten and Layden had spent itself before the Scaff car came upon the scene, and that, therefore, the negligence of each defendant was separate and distinct from the negligence of the others, resulting in three separate and distinct causes of action against three separate and disconnected defendants. In speaking for the Court, *Stacy, C. J.,* said: "It will be noted the complaint alleges a sequence of events which successively, concurrently and jointly produced the plaintiff's injuries. The defendants are sought to be held liable as joint tort feasors. *Levins v. Vigne*, 339 Mo. 660, 98 S.W. 2d 737, and 4 Blashfield, Sec. 2552. The plaintiff alleges successive, joint and concurrent torts which in their cumulative effect produced her injuries.

"There may be one or more proximate causes of an injury. These may originate from separate and distinct sources or agencies operating independently of each other, yet if they join and concur in producing the result complained of, the author of each cause would be liable for the damages inflicted, and action may be brought against any one or all as joint tort-feasors. *White v. Carolina Realty Co.*, 182 N.C. 536, 109 S.E. 564."

In light of the facts in the case now before us, it would seem the plaintiffs were justified in alleging that their respective injuries were caused by the joint and concurrent negligence of the defendants. Therefore, they had the right to have the issues as raised by the pleadings submitted to the jury.

In *Potato Co. v. Jeanette*, 174 N.C. 236, 93 S.E. 795, quoting from *Clark v. Guano Co.*, 144 N.C 64, the Court said: " 'The court below need not submit issues in any particular form. If they are framed in such a way as to present the material questions in dispute, and so as to enable each of the parties to have the full benefit of his contention before the jury, and a fair chance to develop his case, and if, when answered, the issues are sufficient to determine the rights of the parties and to support the judgment, the requirement of the statute is fully met.' "

The appellant herein contends that he was not permitted to present his contentions to the jury under the issues submitted.

In the case of *Lewis v. Hunter*, 212 N.C. 504, 193 S.E. 814, the plaintiff's intestate was struck by the car of one defendant and carried on the fender thereof for some 50 to 70 feet before rolling off and being struck by the car being operated by the other defendant. The first issue submitted to the jury was: "1. Was the death of plaintiff's intestate caused by the negligence of the defendants, or any of them, as alleged in the complaint, and if so, by which defendant or defendants? Answer: 'Yes, all three.' " Both defendants appealed. The defendant Hunter assigned as error the issues as submitted. The Court said: "This assignment of error cannot be sustained since the issues afforded full opportunity to the appellant to present his theory of the case, namely, the absence of negligence on his part and the presence of contributory negligence on the part of the intestate."

In the instant case the defendant was not in any manner prevented from presenting his contention to the effect that he was not negligent. This he did, but, of course, was compelled to do so in light of the sharply conflicting evidence — conflicting evidence which had to be resolved by the jury. There was, however, no conflicting evidence as

to the negligence of the defendant Winfred Chalmers. These assignments of error are overruled.

Assignments of error Nos. 33, 36, 37 and 38 are to various portions of the charge relating to negligence and joint and concurring negligence, which cover several pages of the record and will not be set out herein. However, in our opinion, the parts of the charge complained of in these assignments of error were not prejudicial to the appellant's rights. It is clear that under the instructions of the court, before the jury could determine whether the joint and concurrent negligence of the defendants proximately caused the injuries to the plaintiffs, the jury was required to determine whether or not the respective defendants were negligent and whether such negligence was the proximate cause or one of the proximate causes that produced the injuries to the plaintiffs. Hence, we hold there is no merit in these assignments of error.

The appellant's assignments of error Nos. 1, 2, 5 and 6 are directed to the admission of the testimony of the witnesses James Colville and A. K. Darroch to the effect that in their opinion the defendant Johnson was operating his car at the time he came around the curve in the highway, just before the collision, at a speed of 60 miles per hour or better, citing *Fleming v. Twiggs,* 244 N.C. 666, 94 S.E. 2d 821.

In the *Fleming* case, the witness, who was sitting in her husband's parked car, testified that she did not see the Twiggs car until she looked back and it was within seven to nine feet of the back of her car and she looked away before the Twiggs car hit her father who had just walked behind her car. This Court held her testimony as to the speed of the Twiggs car was without probative value. This is a far cry from observing a car or cars approaching the witnesses in the instant case for a distance of 75 to 100 yards. The evidence complained of was admissible, its weight and credibility was for the jury. *Lookabill v. Regan,* 247 N.C. 199, 100 S.E. 2d 521, and cited cases. These assignments of error are overruled.

The remaining assignments of error have been carefully examined and in our opinion they present no prejudicial error that would justify a new trial.

In the trial below there was no error in law.

No Error.