J. Wilburn HAMPTON, Plaintiff-Appellant,

v.

Olen A. JOHNSON, Theodore O. Seiberling, and St. Joseph Lead Company, a Corporation, Defendants-Respondents.

No. 50812.

Supreme Court of Missouri, Division No. 2.

Sept. 13, 1965.

Edgar & Edgar, Ironton, for appellant, J. Wilburn Hampton.

Smith & Colson, by David L. Colson, Farmington, for respondent, Olen A. Johnson.

Joseph H. Mueller, Moser Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for respondents Theodore O. Seiberling and St. Joseph Lead Co.

BARRETT, Commissioner.

On January 20, 1961, at 2:15 in the afternoon, the plaintiff-appellant, J. Wilburn Hampton, was a passenger in a Ford automobile being driven by M. B. Mack in a southerly direction on U. S. Highway 61 in Jefferson County. About one mile north of Barnhart Mack's automobile was involved in a collision with two other vehicles, first a pickup truck traveling north on the highway, driven by the respondent Johnson, and subsequently from the rear by a Chevrolet sedan traveling south and driven by Ted Seiberling who had been on a mission for his employer, the respondent St. Joseph Lead Company. The four-lane pavement was snow covered and slushy. It is only necessary to briefly note the circumstance of the multiple vehicular collisions. Mack said that he came over a hill and had pulled out into the passing lane to go around a station wagon. He was traveling at a speed of 40 to 45 miles an hour. As he started around the station wagon about 200 yards away Johnson's pickup began "to slide" over the center line and so he "let up on the gas" and started pulling to the right-hand traffic lane but "I didn't make it all the way back and about that time I saw the pickup truck slide, sliding again.

At that time it was right in front of me and there was nothing I could do but hit." Johnson said that in traveling north at 30 to 40 miles an hour he had passed an automobile approximately "200 yards back" and when he tried to get back into the curb or driving lane he "got in a slide and I couldn't quite make it." He says that he hit a rut, but "don't know if I slid across the line or not." Nevertheless his truck "slid" 30 feet to the left "in the general direction" of the southbound lane and the left rear side of the truck struck Mack's automobile and Mr. Hampton was thrown into the windshield. Seiberling saw the pickup skid "clear across the highway into the path of the blue Ford" which was traveling ahead of him the distance of 50 to 60 yards. He says that when the pickup and Ford collided "why, it bounced and spun and then stopped, oh, roughly at right angles to our line of traffic." Seiberling applied his brakes but his Chevrolet "kept going right on straight and collided with the left rear end of the blue Ford." In describing how Hampton was injured Mack said that after the pickup and his Ford collided Hampton "was slumped in the front seat after the first part, after having gone through the windshield. * * * He was slumpin' in the front seat after having went through the windshield." Seconds later, there was a second collision, his automobile was struck from the rear, "Well, it seems that Hampton, whenever the car went forward, Hampton tried to go through the windshield again and back in the front seat."

In these circumstances and upon this proof Hampton instituted this action against Johnson, Seiberling and St. Joseph Lead Company and sought $25,000 damages for his resulting personal injuries. In a single instruction he submitted Johnson's liability upon the primary grounds of excessive speed, lack of control and driving on the wrong side of the highway, and Seiberling's and the lead company's liability upon the primary hypothesis of excessive speed, lack of control and failure to maintain "the

proper interval" of vehicles traveling on the highway. The jury returned a verdict in favor of all defendants and, as indicated, Hampton appeals and makes but one assignment of error and that is directed against two instructions, three and five, given at the request of respondent Johnson.

Briefly, instruction 3 told the jury that the charge against Johnson was "negligence" which was "not in law presumed" but must be established by proof and "the mere fact standing alone" that his automobile skidded and slid across the center line into Mack's automobile "does not necessarily establish negligence on the part of the defendant, Johnson." Thereafter the instruction hypothesized the physical surroundings, the snowy pavement and direction of vehicles, and Johnson's exercise of the highest degree of care, a speed that was not negligent and finally "if you find that defendant Johnson's automobile, without negligence on defendant Johnson's part, began to slide and skid, and slid and skidded out of control across the center line * * * and if you find that defendant Johnson * * * was unable to avoid the collision after his car began to slide and skid, then you are instructed that your verdict shall be in favor of the defendant, Johnson." Instruction 5 told the jury "that the mere fact standing alone that there was an accident" did not entitle plaintiff to a verdict, he had to prove negligence as set out in other instructions. Then the jury was told that a verdict could not be based on surmise and speculation.

It is said that the effect of these instructions was to tell the jury that "plaintiff could not recover unless one of the co-defendants was negligent" and it is urged therefore that the instruction was manifestly prejudicially erroneous to the plaintiff "in ignoring and excluding from the jury all the issues in regard to the negligence of one defendant who was independently charged with specific acts of negligence allegedly contributing, in whole or in part, to plaintiff's injuries." Elaborating and more

specifically it is said that these instructions "ignore the issue of the alleged concurrent negligence of the defendant Seiberling and tell the jury that plaintiff could not recover unless they found that Johnson was negligent." It is said that logically, according to these instructions, if the jury found that Johnson was not negligent "they must find for the other defendant also." It is particularly urged that these instructions are improper and erroneous in a three-car collision case such as this.

In the first place neither the circumstances nor the instructions are comparable to the principle involved in the leading case of Levins v. Vigne, 339 Mo. 660, 98 S.W.2d 737. In that case Levins (shortly after midnight, January 1, 1932) "was prostrate in the center of the street in a 'crouched position'" when the defendant drove down the street and dragged Levins beneath his automobile for some distance and seriously injured him. The defendant claimed that Levins had previously been struck by another automobile and left in the street and accordingly offered an instruction hypothesizing the fact and said that if he (Levins) "received injuries therefrom prior to being picked up, carried and dragged by the defendant's automobile, *which could have caused his death,* or if you are unable to determine from the evidence, which injuries, if any, caused his death" then a verdict could not be returned against defendant on "the mere supposition or conjecture" that the injuries from the defendant's dragging him was "the sole cause of his death." It was first said that "(i)t is doubtful that there is any substantial evidence" of the basic underlying fact hypothesis that Levins had been struck by another automobile. In any event, of the refused instruction the court said "the instruction seems to lay down the proposition, or convey the direction, that the jury could not find for plaintiff, though they believed defendant negligently ran his automobile over and against Levins, *unless they could separate the injuries resulting from defendant's negligent act* from the injury or injuries sus-

tained when struck by the supposed first automobile *and further find that such injuries were the sole cause of death. The instruction excludes liability on the part of defendant for negligence which caused an injury or injuries contributing to, or combining or concurring with, the other prior injuries to cause death."*

■ The emphasized language may be sufficient to distinguish the two cases but if not the instructions here, 3 and 5, were not concerned with separate liability for separately inflicted injuries. In this case as indicated in the beginning there was no question as to the sequence of events and the facts of the occurrences are all but admitted. In this case these instructions do not plainly "lay down the proposition, or convey the direction" that liability may not be found against Seiberling and his employer unless liability is first found against Johnson. Neither Seiberling nor any circumstance connected with him is specifically mentioned. Aside from their legal correctness these instructions deal with and concern Johnson only. They do not, it is true, deal with the concurrent negligence of Seiberling and his employer but they do not in express terms exclude their concurrent negligence and liability. Then too in instruction one, in addition to the indicated hypotheses, the details upon which separate liability of each defendant could be separately found were fully set forth and then as to the Seiberling collision the instruction said "or as a direct result of this collision *combined with the previous collision between the vehicle of the defendant Johnson and the vehicle in which the plaintiff was a passenger,* the plaintiff was injured." Instruction 2 told the jury that "if you find the issues in favor of Plaintiff and against the Defendants, *or against one or more of them,* as submitted in other instructions herein" damages were to be fixed in a certain manner. Instruction 6 told the jury that if they found in accordance with other instructions *"that the Defendant Johnson and the Defendant Seiberling, or*

*both of said Defendants,"* were negligent in the operation of their automobiles and that Mack was also negligent in the operation of his automobile the verdict nevertheless should be for the Plaintiff *"and against one or more of the other Defendants,* in accordance with the other instructions of this court."

■ Thus considering all the instructions in a series it does not appear that instructions 3 and 5, unlike those offered in Harding v. Kansas City Public Service Co., Mo.App., 188 S.W.2d 60, 66, could "mislead the jury in that they totally ignore the doctrine of concurring proximate causes." In McGhee v. Jones, Mo., 336 S.W.2d 722, another three-vehicle collision, the circumstances were fully set out and in conclusion it was said, "The plaintiff very carefully gave instruction 4 which informed the jury that if they found that the negligence of McGhee and the negligence of Jones 'directly concurred, combined and contributed to cause plaintiff to sustain injury' a verdict should be returned against Jones and so, reading the instructions together, there was no possibility of the implication that there was no liability for Jones' initial or concurrent negligence." And finally, this was a simple elemental automobile negligence case and while three separate vehicles and five persons were involved there was virtually no dispute as to the essential facts. The issues were simple and the ultimate problem upon this appeal is whether by reason of these two instructions "error was committed by the trial court against the appellant, and materially affecting the merits of the action." RSMo 1959, § 512.160 (2), V.A.M.S.; Civil Rule 83.13, V.A.M.R. And, as indicated, in summary upon this record it may not be said that these instructions, particularly in view of the simplicity of the issues, were manifestly prejudicial to the plaintiff's trial in any respect (Knox v. Weathers, 363 Mo. 1167, 1178, 257 S.W. 2d 912, 918; McGhee v. Jones, supra) and accordingly the judgment is affirmed.

**552**

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.

STOCKARD and PRITCHARD, CC., concur.