STATE v. SOL SLAGLE and LATT SLAGLE.

(Filed 14 December, 1921.)

1. **Homicide—Murder—Evidence—Nonsuit—Trials.**

   Where, upon the trial for murder, there is direct evidence of the actual shooting of the deceased by the defendants, and circumstantial evidence that they afterwards loaded the deceased's body in a wagon and took it to the place where he was afterwards found dead, a motion as of nonsuit was properly denied.

2. **Evidence—Homicide—Murder—Res Gestæ.**

   Upon a trial for murder, circumstantial evidence, forming a part of the *res gestæ,* is properly admitted.

3. **Homicide—Murder—Evidence—Nonsuit—Trials—Dismissal as to One Defendant—Instructions—Prejudice—Appeal and Error.**

   Where two defendants are tried for committing the same crime, the court, upon the evidence, eliminates one of them from the trial upon nonsuit, and a part of the evidence is only admissible as to the one thus discharged, it will not be held as prejudicial to the other when the judge instructed the jury, unmistakably, that this evidence must not be considered against the defendant remaining on trial.

**4. Courts—Trials—Bench Warrants—Arrest of Witness—Expression of Opinion.**

Where one of the defendants, on trial for murder, has been released on the granting of a motion as of nonsuit upon the evidence, and ordered arrested, in the presence of the jury by the judge for illicit distilling of spirituous liquor, on evidence given on the trial, and bond required for his appearance, it is not an expression of opinion by the trial judge in the case at bar upon the weight or credibility of the evidence, as it might if he had been held for perjury.

**5. Instructions—Contentions—Disagreement Between Judge and Attorney —Jury.**

When the counsel and judge disagree as to a part of the evidence introduced during the trial, in the charge to the jury while stating the contentions of the parties, it is proper for the court to instruct the jury to depend upon their own recollection of the evidence.

APPEAL by defendants from *McElroy, J.,* at March Term, 1921, of BUNCOMBE.

The defendants were convicted of murder in the second degree at March Term, 1921, of Buncombe Superior Court, and from the judgment upon such conviction, appealed to this Court.

The State's evidence tended to show that Luther Merrill left his home, eleven miles from Asheville, in Buncombe County, about two o'clock in the afternoon of Monday, 31 January, 1921, in the company of defendant Sol Slagle. His wife saw him no more until she was taken to the place, where his dead body was, on Wednesday afternoon, 2 February, 1921. It was lying about 116 yards from the public road and behind a chestnut tree. It had evidently been removed from the place of killing to the chestnut tree, for his hat and extra pair of shoes were placed near the body and his overcoat was thrown across it. There is evidence of threats made by Sol Slagle that if Luther ever fooled around him he would kill him and do away with him, and that they were all at the still last fall at the time this statement was made. He further said that Luther had "turned him up" a time or two. It appeared that Sol Slagle, Charlie Slagle and Latt Slagle were operating a blockade still with Eli Kilpatrick, not far from Sol's house. It was in a dug-out on the back of a branch and covered over with leaves. A large pistol belonging to Latt Slagle was seen by the witness at Sol Slagle's house, where Latt lived a short time before the tragedy. About 400 yards from where the body was found, an officer, Dillingham, by name, discovered where a wagon had been turned around and backed against the bank of the road with the prints of the feet of horses appearing to have been standing there some time. A little ravine ran from the road there, and Dillingham followed this ravine up and found the blockade still in a dug-out as hereinbefore mentioned. He described where the still was, and what he did

at that place. From the still to where he had discovered the wagon tracks and horse tracks the distance was 238 steps. He pursued the tracks of the horse and wagon, and ·also examined the ground at the red bank, where the wagon had been backed, and he saw well-defined tracks of a man in the soft earth. He inserted a shoe, gotten at Sol Slagle's house, into this track and it fitted it. He measured the wagon tracks, and also the wagon at Sol Slagle's, and the width of the tires were exactly the same. The left hind foot of the horse, in the tracks made at the bank, showed two high nails, that is, new nails that had been driven in after the shoe had been put on. The track at the soft place in the earth, and the foot of Sol Slagle's horse were identical in size, and Sol Slagle's horse had high nails in his shoes. The witness examined the wagon, also, and at the right-hand side found a blood spot, that had run down from the top .of the board. It ran down the board and then seeped through where the board comes to the bottom and. on the brakes. He discovered other blood spots on the wagon. Dillingham saw the body of deceased at the undertaking establishment. The first shot hit just above the hip bone and went through to the other side, and the other shot was about four inches higher. The upper shot looked as though it had ranged a little downward. The lower shot apparently went straight through. The bullets, after passing through the body, lodged in the clothes of the deceased. They were steel jacketed and in size 45 caliber. He also found a pair of overalls, a jumper jacket and a pair of shoes at Sol Slagle's and on the jumper jacket were blood stains. The board with blood stains on it, the shoes, bullets and overalls were all introduced in evidence.

Onie Kilpatrick and his father, Eli Kilpatrick, both testified that they were eye witnesses of the killing of Luther Merrill by Latt Slagle and Sol Slagle. Eli testified: "I was on the other side of the branch from the still, within 25 or 30 yards of it. I saw Sol and Latt and Luther Merrill there at the still. Luther Merrill was sitting down when I first noticed him, and Sol and Luther were arguing someway or another, I couldn't understand exactly what they were saying, they were arguing, and Luther raised up, and Latt shot him. Luther just raised and began to turn like he was going to run, and when he did that, why he just lit in shooting at him, Latt did; I saw him until the shooting was over and he fell, and I just went on home, moved pretty fast. I didn't go back up there; I never said anything to either one of the Slagle boys about it. I stayed at home that night."

*Attorney-General Manning and Assistant Attorney-General Nash, and and A. Hall Johnston for the State.*

*J. Scroop Styles for defendants.*

WALKER, J., after stating the case: The theory of the State was, that Sol and Latt Slagle killed Luther Merrill at the still and then carried his body to the wagon at the road and thence to the place where it was found on the following Wednesday. With plain and direct evidence of this sort, as to the actual killing of the deceased by the defendants, Sol and Latt, there can certainly be no foundation for defendant's Exceptions 5 and 7, to the judge's refusal to give judgment as of nonsuit against the State, at the conclusion of the State's testimony, and again, at the conclusion of all the testimony.

Exceptions 1 and 2 were taken to evidence which detailed circumstances connected with the disappearance of the deceased. Exception 4 was to similar evidence, and in each case, it seems that this evidence was material as part of the *res gestæ*. Exception 5 was taken to evidence plainly admissible as to Charles Slagle, and confined expressly by the judge to the purpose for which it was admissible, and after Charles Slagle was eliminated, as a defendant, by a judgment of nonsuit in his favor, the judge, again in his charge to the jury, expressly told them that they must disregard this evidence.

The defendants, in their brief, refer to an error which nowhere sufficiently appears in their assignments of error. It is thus set out in the record:

"It is agreed by the attorneys of record, whose names are hereto attached, that, at the time the motion was sustained as to Charles Slagle, as set out in the record, there was no charge of distilling against Charlie Slagle, but the court ordered him held, pending an indictment based upon the testimony given by Jim Lawrence, Oney Kilpatrick and Eli Kilpatrick, and ordered Charlie Slagle in custody, fixing his bond at one thousand five hundred dollars ($1,500), and all this was done in the presence of the jury. This may be treated under the defendant's Exception No. 6." But we will discuss it nevertheless.

The right of a *nisi prius* judge to order a witness, or anyone else, into immediate custody for a contempt committed in the presence of the court in session, is unquestioned. But the committing of a witness, in either a criminal or a civil action, into immediate custody for perjury in the presence of the jury is almost universally held to be an invasion of the rights of the party offering the witness, and as an intimation of opinion on the part of the judge, prohibited by the statute. *S. v. Swink,* 151 N. C., 176, and the cases there cited. In this case, the charge that Charles Slagle was guilty of "blockading" was dependent upon the testimony of Jim Lawrence and the two Kilpatricks. As it turned out, the State's case against the two defendants, Sol and Latt Slagle, for murder, was also largely dependent upon the credit the jury should give to these witnesses. It seems that this was not an expression of opinion by the judge upon their credi-

57—182

bility. In no sense, was it a direct attack upon the credit of a principal witness .such as there was in *Swink's case* and the cases similar to it. There was nothing to do in the case of Charles Slagle except to discharge him after the nonsuit, unless there was another charge pending against him, and so this was only an attempt by the judge to hold him to answer to another charge, which arose out of the evidence, and the effect of this was not to give these witnesses any additional credit, or to express an opinion favorable to the credibility of their testimony, but simply to say that, on the whole case, there was probable cause against Charles Slagle, and a necessity to investigate further, which investigation ·could only be made by a jury, in like manner as the pending investigation, as to the other two Slagles, was being made by a jury.

The course of the presiding judge in demanding bail of Charles Slagle, upon the charge of unlawfully dealing in liquor, commonly called "block-ading," which is a violation not only of our statute, but of the "Vol-stead Act" of Congress, did not, in law, prejudice the defendants. The judge did not express any opinion as·to whether Slagle was guilty, or as to whether the testimony of the two witnesses was true, or not, but he merely acted upon the suspicion that the simple oath of the two men, as to the fact, ·were sufficient to show probable cause, as to Slagle, and added nothing to the credibility of the other two men, and we are quite sure it was so intended by the judge and not so regarded by the jury. It was one of the ordinary incidents of a trial, and while it may always be better to send the jury out before taking such action, it sometimes becomes necessary, for a judge to act with great promptness in such cases to prevent any escape of the offender. *S. v. Swink, supra,* cited by the defendants' counsel in support of this alleged exception, is not at all in point. There the Court by its action directly impeached the credibility of the party's principal witness, by binding him over for perjury, which, of course, would prejudice the defendant for whom he had testified. We doubt if this exception is properly raised in the record, but we have, nevertheless, commented upon it.

The court admitted certain evidence which was competent against Charles Slagle so long as he remained a defendant, and when he was retired by the nonsuit, the judge properly instructed the jury not to consider it.

Several exceptions were taken to the judge's statement of contentions of the parties, but only one was called to the court's attention, and that raised an issue between the judge and counsel as to what the evidence was on the particular point. This relates to the supposed evidence as to defendants' being seen while tracking Merrill and as to whiskey being found near the house. The response of the judge was sufficient to pro-tect the rights of the defendants. He told the jury that if there were

any contentions, supported by evidence, to consider them, which implied that those, not so supported, should not be considered. The counsel could not himself remember with certainty whether the contention then being stated was supported by evidence. He merely said that he did not then recall any such evidence.

There is no merit, at all, in the other exceptions and they, therefore, require no separate discussion.

We have carefully reviewed and considered this very long record, and find no reversible error therein. The defendants' counsel safeguarded the rights of the defendants at every point by a very able argument, but there is no reason for disturbing the judgment.

No error.