## STATE v. JAMES PATTERSON SIMPSON.

(Filed 11 April, 1951.)

**1. Automobiles § 30d—**

　　Direct and positive testimony by the prosecuting witness that defendant was highly intoxicated and was under the steering wheel immediately after the collision, *is held* sufficient to be submitted to the jury on a charge of drunken driving, G.S. 20-138, the probative value of the testimony being for the jury.

**2. Criminal Law § 50d—Arrest of defendant and his witnesses to the knowledge of jury held impeachment of their testimony entitling defendant to new trial.**

　　Where the record discloses that the trial court immediately upon adjournment for noon lunch ordered the sheriff to take defendant and his two witnesses into custody, and that when the court reconvened, the jury being in the box, defendant and his two witnesses were brought into the courtroom in the custody of the sheriff and his officers, a new trial must be awarded for impeachment and depreciation by the court of defendant's evidence and that of his witnesses, there being no suggestion of any contumacy justifying the court in acting peremptorily, and it is not necessary that the record affirmatively show the jury had any knowledge of the

occurrence, since the jurors are presumed to know what goes on in their presence.

**3. Criminal Law § 53f—**

The trial court may not in any manner, whether directly or indirectly, by comment on the testimony, by arraying the evidence unequally in the charge, by imbalancing the contentions of the parties, by choice of language in stating the contentions, or by general tone and tenor of the trial, indicate what impression the evidence has made on his mind or what deductions he thinks should be drawn therefrom.

**4. Same—Misstatement of evidence and manner and language in stating the State's contentions held error as expression of opinion upon evidence.**

An erroneous statement that defendant never denied his driving the car at the time in question although "he had every opportunity" to do so (notwithstanding the failure to call the inadvertence to the court's attention in apt time) and the language of the charge in stating the State's contentions that the prosecuting witness had been shown to be a responsible colored man worthy of belief whose "character alone in contradiction of the defendant and his witnesses is worth more than a dozen of them" and that defendant and his witnesses were trying to embarrass the prosecuting witness by the testimony of admitted criminals and that the testimony of the prosecuting witness should be given more weight and credit than a "courthouse full of the kind and stripe and character" of defendant and his witnesses, must be held for prejudicial error as an expression of opinion upon the weight of defendant's evidence in violation of G.S. 1-180.

APPEAL by defendant from *Phillips, J.,* January Term, 1951, of CABARRUS.

Criminal prosecution on warrant charging the defendant with operating a motor vehicle upon a public highway in Cabarrus County, this State, while under the influence of intoxicants in violation of G.S. 20-138.

The case was tried originally in the Recorder's Court of Cabarrus County and *de novo* on appeal to the Superior Court.

The State's evidence is to the effect that on the night of 15 May, 1950, between 8:00 and 9:00 o'clock, Jesse Banner, a Negro school teacher, was driving his Chevrolet automobile southwardly on Zion Road in Cabarrus County when a Ford car, traveling northwardly on the same road and driven by the defendant, struck the Chevrolet car of the prosecuting witness and knocked it into the ditch on the side of the road. The defendant was in "a high state of intoxication, very drunk, and had approximately one-half pint of whisky in a bottle. . . . He was under the steering wheel" (immediately after the collision).

The defendant testified that the Ford car in question belonged to Gene Green; that he and Homer Hurlocker were on the back seat; that he was asleep when the wreck occurred, and that he "was not driving the car. . . . I had not been driving that car at any time that night." The de-

STATE *v.* SIMPSON.

fendant admitted that he and Hurlocker were drinking. They were both arrested for public drunkenness.

Gene Green, a witness for the defendant, testified that he was with the defendant on the night in question. "It was my car and I was driving. James Simpson did not drive the car at any time that evening. He was sitting in the back seat with Hurlocker at the time of the wreck."

Homer Hurlocker, a witness for the defendant, testified that the Ford car belonged to Green and that Green was driving; that Simpson did not operate the car at any time that evening, and that he and Simpson were drinking. On cross-examination, he admitted that he had been convicted of public intoxication a number of times. "I don't know whether it was as many as 59 or not."

At this point, the court took a recess for the noon lunch. Immediately upon adjournment, some of the jurors being still in the courtroom, the trial court called the sheriff to his rostrum, and ordered him to take the defendant and his two witnesses, who had been on the witness stand, into custody. They were immediately arrested in the courtroom and placed in jail. When the court reconvened after the noon recess, the jury being in the box, the defendant and his two witnesses were brought into the courtroom in the custody of the sheriff and his officers, and the trial of the case was resumed. Later in the day the court instructed the solicitor to draw indictments against the defendant and his two witnesses for perjury in connection with the Simpson case. They were held in jail for several days until they were able to give appearance bonds. Exception.

In the court's charge to the jury, he stated in the form of a contention, that the defendant went on the stand "and never denied it (that he was driving the car), didn't say he didn't do it, and he had every opportunity." Exception.

Again, "the state contends that Banner (prosecuting witness) holds a responsible position . . . that he is a man worthy of your belief; that he has proven a good character by a white man who has known him for a number of years, and that his character alone in contradiction of the defendant and his witnesses is worth more than a dozen of them." Exception.

And again, "the State contends . . . that they (defendant and his witnesses) are trying to embarrass the witness Banner and are trying to discredit his testimony by three admitted criminals and a little 15-year-old girl that they brought up here whose mother is mad with Banner." Exception.

And again, "the State contends . . . that the defendant on numerous occasions has been convicted of crime, that all of his witnesses have been convicted of crime, one of them 57 times, or thereabouts, for public drunkenness . . . and contends that one colored man's testimony, such as

Banner, should be given more weight and credit by you than a courthouse full of the kind and stripe and character that the defendant has shown upon admission upon the stand and his witnesses have shown." Exception.

Verdict: Guilty.

Judgment: Eight months on the roads.

The defendant appeals, assigning errors.

*Attorney-General McMullan, Assistant Attorney-General Moody, and Charles G. Powell, Jr., Member of Staff, for the State.*

*B. W. Blackwelder and R. Furman James for defendant.*

STACY, C. J. The defendant is well advised in abandoning his demurrer to the sufficiency of the evidence to carry the case to the jury. The prosecuting witness was direct and positive in his testimony. Its probative value was for the twelve. *S. v. Hovis, ante,* 359.

A new trial must be granted, however, because of the impeachment and depreciation by the court of the defendant's evidence and that of his witnesses, Green and Hurlocker. This was done, first, by ordering the defendant and his two witnesses into custody during the trial, which action by the court came to the attention of the jury trying the case, *S. v. McNeill,* 231 N.C. 666, 58 S.E. 2d 366; and, secondly, by the manner in which the court's charge was given to the jury. *S. v. Rhinehart,* 209 N.C. 150, 183 S.E. 388.

First. It would be begging the question to say that "it does not appear on the record" the jury had any knowledge of the order of arrest or the actual incarceration of the defendant and his witnesses during the trial. *Kelly v. Boston,* 201 Mass. 86, 87 N.E. 494. The jury was in the courtroom and saw what transpired, some of them at the beginning of the noon recess, and all of them after the court had reconvened for the afternoon session. They are presumed to know what goes on in their presence. The case of *S. v. McNeill, supra,* is controlling on the point.

There is no suggestion of any contumacy on the part of the defendant or his witnesses such as might have justified the court in acting peremptorily, without prejudice to the defendant. *S. v. Slagle,* 182 N.C. 894, 109 S.E. 844; *Seawell v. R. R.,* 132 N.C. 856, 44 S.E. 610; 53 Am. Jur. 82.

Second. The authorities are to the effect that no judge at any time during the trial of a cause is permitted to cast doubt upon the testimony of a witness or to impeach his credibility. G.S. 1-180, as rewritten, Chap. 107, S.L. 1949; *S. v. Cantrell,* 230 N.C. 46, 51 S.E. 2d 887; *S. v. Owenby,* 226 N.C. 521, 39 S.E. 2d 378; *S. v. Woolard,* 227 N.C. 645, 44 S.E. 2d 29; *S. v. Auston,* 223 N.C. 203, 25 S.E. 2d 613.

The judge may indicate to the jury what impression the evidence has made on his mind, or what deductions he thinks should be drawn therefrom, without expressly stating his opinion in so many words. This may be done by his manner or peculiar emphasis or by his so arraying and presenting the evidence as to give one of the parties an undue advantage over the other, or, again, the same result may follow the use of language or form of expression calculated to impair the credit which might otherwise and under normal conditions be given by the jury to the testimony of one of the parties. *Speed v. Perry,* 167 N.C. 122, 83 S.E. 176; *S. v. Dancy,* 78 N.C. 437; *S. v. Jones,* 67 N.C. 285.

It can make no difference in what way or manner or when the opinion of the judge is conveyed to the jury, whether directly or indirectly, by comment on the testimony of a witness, by arraying the evidence unequally in the charge, by imbalancing the contentions of the parties, by the choice of language in stating the contentions, or by the general tone and tenor of the trial. The statute forbids any intimation of his opinion in any form whatever, it being the intent of the law to insure to each and every litigant a fair and impartial trial before the jury. *Withers v. Lane,* 144 N.C. 184, 56 S.E. 855. "The slightest intimation from a judge as to the strength of the evidence or as to the credibility of a witness will always have great weight with the jury, and, therefore, we must be careful to see that neither party is unduly prejudiced by an expression from the bench which is likely to prevent a fair and impartial trial"— *Walker, J.,* in *S. v. Ownby,* 146 N.C. 677, 61 S.E. 630.

It is true, where the court misquotes the evidence, *e.g.,* here, "the defendant went on the stand and never denied that he was driving the car," when the fact is he did deny it, the misquotation or inadvertence should be called to his attention at some appropriate time before the case is given to the jury, so as to afford an opportunity of correction. Where this is done and no correction is made, the party is entitled to his exception on appeal. *Harris v. Draper, ante,* 221, 63 S.E. 2d 209.

We think the court inadvertently conveyed to the jury an expression of opinion upon the weight of the defendant's evidence in violation of the provisions of G.S. 1-180, as rewritten, Chap. 107, S.L. 1949. The error may have been one of those casualties which, now and then, befalls the most circumspect in the trial of causes on the circuit. *S. v. Kline,* 190 N.C. 177, 129 S.E. 417; *S. v. Griggs,* 197 N.C. 352, 148 S.E. 547; *S. v. Stiwinter,* 211 N.C. 278, 189 S.E. 868; *S. v. Buchanan,* 216 N.C. 34, 3 S.E. 2d 273; *S. v. Floyd,* 220 N.C. 530, 17 S.E. 2d 658; *In re Will of Lomax,* 225 N.C. 31, 33 S.E. 2d 63. Even so, the question is presented on appeal, and we must "Hew to the line, and let the chips fall wherever they may." *Barnes v. Teer,* 219 N.C. 823, 15 S.E. 2d 379; *S. v. Hovis, ante,* 359.

The defendant is entitled to a new trial. It is so ordered.
New trial.