STATE v. ELGIE WAGSTAFF.

(Filed 1 February, 1952.)

1. **Constitutional Law § 34d—**

   Ordinarily, in offenses less than capital, the presiding judge is not required to assign counsel to represent defendant, but where an inexperienced youth is charged with a serious felony it is proper for the court to assign counsel for him, and failure to do so may be held for error. Here the trial judge's explanation to the jury of the absence of counsel may have left the impression that this was due to defendant's stubbornness and resentfulness.

2. **Contempt of Court § 2a—**

   The trial judge has power to order anyone, either witness or spectator, into custody for what the court finds is a contempt committed in his presence.

3. **Same: Criminal Law § 50d—Ordering of defendant's father into custody in presence of jury held prejudicial under facts of this case.**

   Defendant's father, following some conversation with the judge, was ordered to sit down, and upon a second protest that the case should be continued and counsel obtained for the defendant saying "he was not getting a fair trial," in the presence of the jury the father was ordered into custody and removed from the court room. It also appeared on cross-examination that previously defendant had had an altercation with his father. *Held:* Under the facts and circumstances of this case, the deprivation of defendant of the aid and advice of his father, the only person present who could explain the previous altercation between them, must be held for error as prejudicing defendant in the eyes of the jury, there being nothing in the record to indicate that the conduct of defendant's father was engaged in for the purpose of causing a mistrial.

4. **Constitutional Law § 34a—**

   A person charged with crime is entitled to a fair trial before an unprejudiced jury in an atmosphere of judicial calm, and the responsibility rests upon the trial judge to preserve that right.

5. **Criminal Law § 78c—**

   Where a youthful, inexperienced defendant is not represented by counsel, the State properly makes no point as to the time, manner, or form of an exception presenting defendant's contention that an incident during the trial unduly prejudiced him in the eyes of the jury.

APPEAL by defendant from *Frizzelle, J.,* April Term, 1951, of PERSON. New trial.

The defendant was indicted for assault with intent to kill in violation of G.S. 14-32.

The State's witness L. J. Martin, the operator of a filling station and store, testified that on the occasion alleged he had an altercation with defendant in the course of which the witness had drawn his pistol and ordered the defendant off his premises; that thereafter while witness was putting gasoline in a truck the defendant seized him from behind, wrested the pistol from him, struck him on the head with it, inflicting a scalp wound requiring five stitches, and threw him on the ground and kicked him, causing a fracture of a bone in his hip, declaring he was going to kill him. He was taken to a hospital and after two months was still unable to sit up straight.

On the other hand, the defendant testified that Mr. Martin pointed his pistol at him and threatened to kill him; that he twisted his arm to prevent him from shooting and the pistol was discharged, burning defendant's coat; that Mr. Martin seized his arm and tried to pull him down, and he struck him on the head to get loose.

There was verdict of guilty as charged. From judgment imposing sentence of not less than eight nor more than ten years defendant appealed.

*Attorney-General McMullan and Assistant Attorney-General Moody for the State.*

*D. Emerson Scarborough for defendant, appellant.*

DEVIN, C. J. The defendant, a Negro 19 years of age, was without counsel at the trial below. He was a resident of an adjoining county and at the time of the offense charged was a soldier in the United States Army. There was no motion for judgment of nonsuit and the evidence was sufficient to carry the case to the jury.

The defendant, however, challenges the validity of the result below chiefly on the ground that an incident which occurred during the trial prejudiced him before the jury, and improperly influenced the adverse verdict and consequent judgment.

The facts in connection with the incident referred to and upon which the defendant bases his assignment of error are set out in the record. It seems that in the seating arrangement of the courtroom, Negroes customarily sat in the gallery unless they were parties or witnesses. During the examination of the State's witness Martin, the father of the defendant who had been seated in the gallery came down into the bar and approached the bench, and had some conversation with the Judge as to the trial of the case. What was said does not appear, but the Judge ordered

him to sit down. He took a seat beside the defendant, but later he again approached the Judge and protested to him that the case should be continued so that he could get a lawyer for his son, "that he was not getting a fair trial, or words to that effect." The record states "whereupon the Judge in the presence of the jury ordered the defendant's father into the custody of the sheriff, and he was taken upstairs and locked in the jail and remained there during the remainder of the trial."

The defendant testified he had never before been arrested for anything. During his cross-examination he said his father on some occasion not explained had shot him but he did not know why. The State offered evidence that defendant's general reputation was bad. The sheriff further testified that when defendant was put in jail he told him if he wanted to see a lawyer he would get one, and any witnesses he wished. Defendant gave him names of four witnesses, but said the Army would see about a lawyer for him; that defendant's father and brothers were notified, but the sheriff said "They did not seem to care much about it, and the father (who had just been released from hospital) did not care enough to go to see him." When the defendant closed his case the court inquired if there were any witnesses subpoenaed for the defendant. The Solicitor stated one Fuller, and Frank Smith for whom subpoenas had been issued could not be found. Frank Smith was called out. The court inquired what defendant wished to show by Frank Smith, and the defendant said Smith was present at the time of the difficulty, but he didn't know what he would testify to if he were present.

The defendant noted exception to the following statement by the court in closing his charge to the jury: "I will call the jury's attention to the fact that while the defendant is not represented by counsel in this case, evidence in this case tends to show that several times last week and several times today after the case was called, opportunity was afforded the defendant to engage counsel and to avail himself of the testimony of any person whom he might desire to have subpoenaed."

While ordinarily in criminal actions less than capital the presiding judge is not required to assign counsel to represent the defendant (*State v. Hedgebeth,* 228 N.C. 259, 45 S.E. 2d 563; *Uveges v. Pennsylvania,* 335 U.S. 437), in view of the youth and inexperience of the defendant in this case charged with a serious felony it would seem the court should have gone further than afford him opportunity to employ counsel and have assigned counsel to represent him. The defendant also assigns error in that the court's final words to the jury, in explanation of the absence of counsel, tended rather to hold the defendant up to the jury as stubborn and resentful, and not meriting consideration for his defense which ordinarily would have been accorded to uncounseled youth.

Unquestionably it is within the power of the presiding judge to order anyone, either witness or spectator, into custody for what the court finds

is a contempt committed in his presence. *State v. Slagle,* 182 N.C. 894, 109 S.E. 844; *State v. McNeill,* 231 N.C. 666, 58 S.E. 2d 366; *State v. Simpson,* 233 N.C. 438, 64 S.E. 2d 568; *State v. Kirkman,* 234 N.C. 670. But when this is done in the immediate presence of the jury in a criminal action, whether it is to be regarded as prejudicial to the defendant depends upon the circumstances of the case. While neither the language nor the manner of the defendant's father in the instant case is set out in the record, no question is raised so far as defendant's father is concerned as to the propriety of the action of the judge in ordering him into custody, but the point is made that this tended to reflect discredit on the son charged with a serious crime of violence, and also to deprive him of the presence and aid of one who might have been both an adviser and a material witness as to some phases of the case. True, the able and careful judge who presided over the trial of this case was doubtless at the time unaware that defendant's case would be improperly discredited by the court's action, but looking at it in the cold light of the record we perceive that harm could and probably did result to the defendant in the trial of his case. The arrest and removal of his father tended to disparage the defendant in the eyes of the jury in a case in which he was charged with a felonious assault, and deprived him of the aid and advice of his father, the only one present who could refute or explain the suggestion of previous violent conduct on the part of father and son. The jurors presumably saw what took place in their immediate presence and observed the action of the court with respect to defendant's father. *State v. McNeill, supra; State v. Simpson, supra.* What impression the incident made on their minds does not appear, but the defendant urges it must have been harmful to him.

Numerous instances have come to the attention of the Court where persons connected with the trial have been ordered into custody. In the *McNeill case, supra,* a new trial was awarded because the judge ordered defendant's witness into custody on his leaving the stand in the presence of the jury. In the *Simpson case, supra,* two of defendant's witnesses during noon recess of court were ordered arrested. Some of the jurors were present at the time, and when court resumed session the witnesses were brought in in custody. A new trial was awarded. In *State v. Slagle, supra,* a codefendant in an indictment for murder had been discharged. Later during court session this person was ordered arrested for violation of the prohibition law, but this was held under the circumstances not prejudicial.

It is the well settled rule in this jurisdiction that a person charged with crime is entitled to a fair trial before an unprejudiced jury "in an atmosphere of judicial calm," and that the responsibility rests upon the trial judge to preserve this right. *State v. Carter,* 233 N.C. 581, 65 S.E. 2d 9.

The defendant's exception on the ground of harmful effect on the jury of the court's action in ordering the arrest and removal of defendant's father would have been more aptly presented by a motion at the time for a mistrial and continuance, but in view of the defendant's inexperience in court procedure and absence of counsel the State properly makes no point as to the time, manner or form of the exception.

There is nothing in the record to indicate that the conduct of defendant's father, which the court found contemptuous, was engaged in for the purpose of causing a mistrial. In *Dennis v. U.S.,* 183 F. (2) 201 (226), *Judge Hand,* speaking for the Court, reviewed the conduct of the trial of persons charged with conspiracy to advocate overthrow of the government of the United States. The opinion sets forth the improper conduct of attorneys for the defendants, apparently in effort to cause a mistrial, and the constant bickering between counsel and the trial judge, and the latter's warning that they would be punished for contempt. It was said, "throughout, the Judge kept repeating to the jury that they were not to take what he said to the attorneys against their clients." Under the circumstances set out in the opinion in that case the result of the trial was upheld. The decision of the Circuit Court of Appeals was affirmed by the Supreme Court of the United States in *Dennis v. U. S.,* 341 U.S. 494. See also Hyatt on Trials, sec. 1065.

After a careful consideration of the case as presented by the record before us, we reach the conclusion that the defendant should be awarded a new trial, and it is so ordered.

Other exceptions noted by the defendant and brought forward in his assignments of error are not discussed or considered as they may not arise on another hearing.

New trial.