74 S.E.2d 291 (1953)
237 N.C. 1
STATE
v.
SMITH et al.
No. 652.
Supreme Court of North Carolina.
January 30, 1953.
*299 Harry McMullan, Atty. Gen., and T. W. Bruton, Asst. Atty. Gen., for the State.
Jordan & Wright, Hines & Boren, Greensboro, and Don A. Walser, Lexington, for the defendant Francis Duval Smith, alias George Smith.
T. Glenn Henderson and Norman A. Boren, Greensboro, for the defendants R. L. Ferrell, R. L. Paschal, F. B. Money and J. H. Adams.
PARKER, Justice.
At the close of the evidence for the state, the defendant Smith moved for judgment of nonsuit on counts 1 through 10, inclusive, in the bill of indictment; and as to each of said counts. The motion was refused as to all said counts, and the defendant Smith excepted. The defendant Smith introduced no evidence. The other four defendants did introduce evidence. After all the evidence in the case had been concluded, the defendant Smith again moved for judgment of nonsuit on counts 1 to 10, inclusive, and on each one of them. The motion was refused and the defendant Smith excepted. However, in his brief the "defendant Smith concedes that the state's evidence, when viewed in the light most favorable to the state, was sufficient to repel the motions for judgment as of nonsuit upon counts 2, 3, 4, 5, 7 and 9. Hence, the exceptions to the overruling of the demurrer to the evidence and motions for judgment as of nonsuit on these counts are abandoned. On the other hand, it is submitted that the evidence was insufficient to be submitted to the jury upon counts 1, 6, 8 and 10. We can perceive that there might be some difference of opinion as to counts 6, 8 and 10, although we believe the conviction on these counts should be set aside and reversed." Without repeating the evidence on counts 6, 8 and 10, set forth above, it was amply sufficient to overcome the defendant Smith's motion for judgment of nonsuit.
At the close of the state's evidence the defendant Paschal moved for judgment of nonsuit upon counts 1, 11, 12 and 13; overruled and Paschal excepts.
*300 At the close of the state's evidence the defendant Ferrell moved for judgment of nonsuit upon counts 1, 14 and 15; overruled and Ferrell excepts.
At the close of the state's evidence the defendant Adams moved for judgment of nonsuit upon counts 1, 16 and 17; overruled and Adams excepts.
At the close of the state's evidence the defendant Money moved for judgment of nonsuit upon counts 1, 18 and 19; overruled and Money excepts.
At the close of all the evidence the defendants Paschal, Ferrell, Adams and Money renewed their motions for judgment of nonsuit; overruled and exception by all four defendants.
Paschal, Ferrell, Money and Adams filed with us a joint brief. Their brief states: "The defendant policemen concede that there was sufficient evidence to submit to the jury on the alleged overt acts of receiving bribes, as charged in counts 11 through 19, inclusive, of the bill of indictment, if the otherwise uncorroborated testimony of two accomplices is sufficient to make out a case for the jury. However, the defendant policemen stressfully urge and contend that there was a total failure of proof sufficient to carry the case to the jury on the charge that they entered into a conspiracy with Smith, and it is submitted that the motions for judgment as of nonsuit on the conspiracy count should have been granted." "It has been repeatedly held by this court that the unsupported testimony of an accomplice, while it should be received with caution, if it produces convincing proof of the defendant's guilt, is sufficient to sustain a conviction. State v. Ashburn, 187 N.C. 717, 728, 122 S.E. 833, and cases there cited." State v. Gore, 207 N.C. 618, 178 S.E. 209, 210. To the same effect State v. Herring, 201 N.C. 543, 160 S.E. 891; State v. Lippard, 223 N.C. 167, 25 S.E.2d 594; State v. Rising, 223 N.C. 747, 28 S.E.2d 221. Upon the admission of the four police officers defendants in their brief, their motion for nonsuit is untenable on counts eleven through nineteen, inclusive. Regardless of such admission there was plenary evidence on those counts to carry the case to the jury.
That leaves for our consideration the refusal of the trial court to nonsuit the state on Count One in the indictment as to all the defendants, or one or more of them.
"On motion to dismiss or judgment of nonsuit, the evidence is to be taken in the light most favorable to the state, and it is entitled to the benefit of every reasonable intendment upon the evidence and every reasonable inference to be drawn therefrom." State v. Shipman, 202 N.C. 518, 163 S.E. 657, 660. On such a motion "the defendant's evidence, unless favorable to the State, is not to be taken into consideration, except when not in conflict with the State's evidence, it may be used to explain or make clear that which has been offered by the State." State v. Bryant, 235 N.C. 420, 70 S.E.2d 186, 188. "The general rule is that, if there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury." State v. Johnson, 199 N.C. 429, 154 S.E. 730, 731. A fatal variance between allegata et probata can be taken advantage of by motion for judgment as of nonsuit. State v. Nunley, 224 N.C. 96, 29 S.E.2d 17.
Count One charges the five defendants with a conspiracy to commit a felony. All the defendants contend that Count One of the indictment charged that a conspiracy existed between Smith on the one hand and the four defendant police officers on the other, under which Smith agreed to give bribes to the police officers in return for an agreement on their part to protect Smith's lottery operations, and that the four police officers consented to receive, and did receive bribes for said purposes. That the evidence discloses, as the defendants contend, that none of the defendant policemen knew that any of the others were the recipients of bribes, nor is there any evidence that Smith directly communicated with any of the four police *301 officer defendants regarding the bribes. That the evidence discloses, when viewed most favorably for the state, the bribery of the policemen was an isolated incident unrelated to the bribery of the other policemen. That while there is evidence that York and Coble gave bribes to the four police officer defendants at Smith's requests and as his agents that would only be evidence of a conspiracy by Smith, York and Coble to corrupt police officers, and does not support Count One; but is a fatal variance between allegata and proof. That there is no evidence from which it could be found that any systematic scheme or plan was either evolved or carried into effect with the defendant policemen to protect Smith's lottery operations.
It is not requisite to convict for the state to prove that the police officer defendants, or any one of them, knew that the others, or any of them, were the recipient of bribes. "It is not necessary, however, that a person to be criminally liable, be acquainted with the others engaged in the conspiracy; although to hold one liable as a participant, it must be shown that he did some act or made some agreement showing his intention to be a participant:" 11 Am.Jur., Conspiracy, Sec. 7. "It is not necessary to constitute the offense that the parties should have come together and agreed in express terms to unite for a common object. A mutual, implied, understanding is sufficient, so far as the combination or conspiracy is concerned, to constitute the offense." State v. Connor, 179 N.C. 752, 103 S.E. 79, 80. However, there is evidence that Ferrell told Coble "I understand some of the other policemen are getting whiskey, groceries and cars. It looks like you could give me a few groceries." There is further evidence that Smith made the payments on a car for Paschal.
The defendants contend there is no evidence that Smith directly communicated with any of the police officer defendants regarding bribes. That is an oversight. There is evidence that Paschal told Coble, Smith had offered him a car if he would knock out opposition bankers; that he had done the job, and he had not come across with the car. Coble reported this to Smith. A day or two later Paschal met Smith at Coble's store, and Paschal and Smith went out of the store for 20 or 30 minutes. When they came back Smith told Coble he had straightened it out; that he was going to buy the car, and make the payments, which he did.
The evidence discloses that York and Coble in dealing with the four police officer defendants were acting under Smith's direction and as his agents. Smith said he could not operate successfully without police protection, and to give money, whiskey, groceries and a car (the car was to Paschal alone) to these four defendants, and that they received what he directed to be given. That they never arrested Smith, York or Coble in their lottery operations. That Paschal knocked out opposition bankers. That Ferrell told Coble "last night I overlooked two down there, it would have cost you more than what these few groceries I got cost." That Adams would come in Coble's store kidding about the numbers, and say "what kind of day did you have? Were you overhit, or did you make money?" Then Adams would say "what about a bottle or two," and Coble would give him whiskey. Money told Coble during 1947 and 1948 he could have arrested him several times, when he was taking "the low" down over the telephone. Smith told York for years that Money was all right, and wouldn't bother the operations, unless he had to do so; that he need not be afraid of Adams, as he was his man; and made the same statements as to Paschal and Ferrell. What Smith told York was admitted against Smith only.
Considering all these facts and circumstances in the light most favorable to the state there was abundant evidence tending to show that all five defendants had entered into a criminal conspiracy with a common design and purpose to unite for the common object of Smith offering bribes to Paschal, Ferrell, Adams and Money, police officers of the City of Greensboro, and of the four said police officer defendants receiving said bribes with the express understanding that they would protect *302 Smith in his lottery operations, as charged in Count One of the indictment. The evidence made out a case for the jury on that count as to all the defendants. The court was correct in refusing the motions for judgment of nonsuit made by all the defendants and each one of them on Count One in the indictment. "Direct proof of the charge (conspiracy) is not essential, for such is rarely obtainable. It may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy." State v. Whiteside, 204 N.C. 710, 169 S.E. 711, 712. The late Chief Justice Stacy speaking for the court in State v. Ritter, 197 N.C. 113, 147 S.E. 733, 734, says: "The gist of a criminal conspiracy is the unlawful concurrence of two or more persons in a wicked schemethe agreement to do an unlawful act or to do a lawful act in an unlawful way or by unlawful meansand it is said that the crime is complete without any overt act having been done to carry out the agreement. (Citing authorities.) * * * The crime of conspiracy consists of the conspiracy, and not of its execution. * * * One who enters into a criminal conspiracy, like one who participates in a lynching, or joins a mob to accomplish some unlawful purpose, forfeits his independence and jeopardizes his liberty, for, by agreeing with another or others to do an unlawful thing, he thereby places his safety and security in the hands of every member of the conspiracy."
Smith's assignment of error No. One. York on re-direct examination by the state before the state rested, testified: "Earl Black was an employee of George Smith's before the roundup in December 1948. I disremember the exact date that Earl Black left George's employment, but he was in Greensboro off and on for the course of as much as three years. He was supposed to be a witness against George and the others for the state, but he failed to testify against George * * *. Black was brought up here, I believe, under subpoena." The evidence shows there was a big blowup in Smith's lottery operations in December 1948, and over 30 people connected with his lotteries were arrested. A warrant was issued for Smith charging him with violating the lottery laws. He became a fugitive from justice, and was arrested in Fayetteville in June 1949. Smith was tried in the Municipal Court of Greensboro on these charges and fined $10,000. Sgt. Evans, a witness for Smith's co-defendants, testified: "The original and basic source of information in connection with that investigation" (referring to the blowup in 1948) "was Earl Black. * * * I talked to Black a week or ten days. I got a tremendous amount of information from Black. He had been in the lottery business in Greensboro with George Smith." The solicitor asked York this question:
"Q. What statements, if any, did George Smith make to you with reference to Earl Black's appearance as a witness against Smith or failure to appear?" Objection by Smith, overruled by the court, and Smith excepted. "A. George said he was supposed to pay Earl Black $4,000.00 not to testify against him, that he had already paid him $1,000.00 and that Carl Vann had $3,000.00 holding it as soon as Earl Black went through with the deal, and didn't testify."
York testified immediately thereafter without objection, "as best I can recall, the $4,000.00 also included Black being a witness against Smith in New Hanover County in Wilmington."
The question had reference to Smith's case in the Greensboro Municipal Court, when he was fined $10,000. The warrants in this case had not been issued against any of the five defendants here.
The defendant Smith contends that the admission of this testimony was prejudicial and material error on the ground the general rule is that evidence of one offense is inadmissible to prove another and independent crime, the two being wholly disconnected and in no way related to each other, and relies upon State v. Smith, 204 N.C. 638, 169 S.E. 230; State v. Choate, 228 N.C. 491, 46 S.E.2d 476; and State v. Fowler, 230 N.C. 470, 53 S.E. 2d 853, 855.
*303 In State v. Fowler, supra, relied upon by Smith, it is said: "To this general rule, however, there is the exception as well established as the rule itself, that proof of the commission of other like offenses is competent to show the quo animo, intent, design, guilty knowledge or scienter, or to make out the res gestae, or to exhibit a chain of circumstances in respect of the matter on trial, when such crimes are so connected with the offense charged as to throw light upon one or more of these questions" (citing numerous authorities).
The question is squarely presented as to whether this evidence comes within the general rule or the exception to it. The evidence discloses that Smith for years had operated vast lotteries in Greensboro. After he was fined $10,000 in 1949, he continued to operate. York testified at the trial "George is still the kingpin," from which it could be inferred that he even then was operating. Smith told York he could not operate profitably without protection. The point at issue in this action was did Smith, directly and through his agents and co-conspirators, give money, whiskey and groceries to his co-defendants, and if so, were they bribes. The evidence objected to showed Smith paid Black a $4,000 bribe for protectioni. e. not to testify against him in Greensboro and in Wilmington on his trials for operating lotteries. The first count in the indictment charges said bribes being offered by Smith to and received by Paschal, Ferrell, Adams and Money with the express and implied understanding that their official action and their omission to perform official acts as police officers were to be influenced thereby. Counts 2 to 19, both inclusive, in the indictment, charge the bribe being offered by Smith, and received by the defendant named in the count with the intent and understanding that his official actions would be influenced thereby. The bill of indictment charges a violation of G.S. §§ 14-217 and 14-218. Section 14-217 has as an essential element of the offense of bribery of officials the receipt of anything of value with the express or implied understanding that his official acts are to be in any degree influenced thereby. This evidence was competent to show the quo animo, intent, design, guilty knowledge or scienter with which Smith, through York and Coble, gave money, whiskey and groceries to Paschal, Ferrell, Adams and Money. In other words, it was competent to show Smith's intent in this case, and not to prove the accusations substantively. It was sufficiently connected with the charges in this case to render it competent for this purpose. It was evidence tending to show also why the state did not call Black as a witness. It was part of a series of transactions carried out by Smith in pursuance of his original design to buy protection, and the jury might well have inferred this common purpose from the evidence. In addition, the bribing of Black not to testify exhibits a chain of circumstances in respect of the matter on trial, and so connected with the offenses charged as to throw light on these questions. The following cases are in accord with this view: State v. Stancill, 178 N.C. 683, 100 S.E. 241; State v. Dail, 191 N.C. 231, 131 S.E. 573; State v. Batts, 210 N.C. 659, 188 S.E. 99; State v. Flowers, 211 N.C. 721, 192 S.E. 110; State v. Smoak, 213 N.C. 79, 195 S.E. 72; State v. Godwin, 216 N.C. 49, 3 S.E.2d 347; State v. Batson, 220 N.C. 411, 17 S.E.2d 511, 139 A.L.R. 614; State v. Edwards, 224 N.C. 527, 31 S.E.2d 516; State v. Biggs, 224 N.C. 722, 32 S.E.2d 352; State v. Bryant, 231 N.C. 106, 55 S.E.2d 922; State v. Summerlin, 232 N.C. 333, 60 S.E.2d 322. The cases of State v. Smith, supra, State v. Choate, supra, and State v. Fowler, supra, are distinguishable. We hold the evidence competent, and the assignment of error is not sustained.
Smith's assignment of Error No. 3. R. A. Craig, a witness for the state, testified that in 1947 he was in Smith's house, and saw an account or record book. The witness was being examined by the solicitor for the state.
"Q. Do you recall seeing any items that particularly aroused your interest?
"Mr. Henderson: Objection. The record would be the best evidence.
*304 "Mr. Jordan: And whether it aroused his interest, your Honor, certainly wouldn't be material.
"The Court: The objection is sustained as to the officers, and overruled as to the defendant Smith." Smith excepted. "Q. What did you see? A. There was a notation on Jeep for $80.54. Q. Jeep, $80.54? A. Yes, sir. Q. Did you see more than one such entry? A. I believe I saw it twice. Mr. Jordan: The defendant Smith moves to strike that evidence. If it was a document, that would be the best evidence, and there's been no foundation laid for the introduction of secondary evidence. The Court: Objection overruled". The defendant Smith excepts.
Previously, Coble had testified: "I do not have any books on the Jeep Account; the records have been destroyed." The foundation had been laid for the introduction of secondary evidence, and the evidence is competent. American Potato Company v. Jeanette Bros. Co., 174 N.C. 236, 93 S.E. 795; Stansbury N. C. Evidence, Sec. 192. In addition what he saw in this book in Smith's home was competent against Smith.
Smith's assignment of Error No. 2.
On the eighth day of the trial the court ordered the defendant Smith into custody, and increased his bond from $3,000 to $50,000. This occurred about 12:30 p. m. on 20 February, 1952 after Smith's counsel had cross-examined Coble, but before the cross-examination of him by the police officers' counsel. York had already testified. The court called Smith's counsel to the bench (counsel on both sides had gone frequently to the bench to talk to the court of their own volition and called by the court during the trial) and quietly stated, not in the hearing of the jury, that he had decided to order Smith into custody. Counsel for Smith protested. The court stated he would direct the sheriff to take Smith into custody out of the presence of the jury. The conversation was "beyond the hearing of the jury." The jury left the courtroom; Smith remaining in the courtroom until the jury had left. The court instructed the sheriff not to walk beside Smith, but to remain a discreet distance away. Smith was then put in jail. After lunch Smith's counsel conferred with the judge in his chambers protesting his action, and saying it had seriously prejudiced Smith's case. The judge called the solicitor into his chambers. The solicitor did not know until then that Smith had been placed in custody. The court then fixed Smith's bond at $50,000. Before court reconvened after lunch, Smith returned with the sheriff from jail to the courtroom, and then the jury was brought from the jury room into the courtroom; Smith being seated in the chair he had occupied before. During the time Smith was in custody, on each and every occasion when he left or entered the courtroom, the jury was in the jury room and out of sight and hearing of the courtroom and the lobby between the courtroom and the public elevator. Nothing was said or done by the court or the sheriff in the presence or hearing of the jury to inform the jury that the defendant had been taken into custody and his appearance bond raised to $50,000. Smith was in the courtroom seated in his usual chair each time the jury entered the courtroom, and he remained there until the jury left the courtroom at each recess. The jury was not kept together. On the afternoon of 14 February, 1952, Smith gave a $50,000 bond, and was released from custody. To this ordering of Smith into Custody and increasing his bond, he excepts, and assigns as error No. 2.
"In a criminal prosecution the state is the plaintiff and may have custody of accused, this being essential for the protection of society. It is within the discretion of the trial court whether accused should be placed in custody; and the court's proper exercise of discretion is not error where the jury were unaware that accused had been placed in custody, or were not influenced by that fact." 23 C.J.S., Criminal Law, § 977.
In State v. Smith, 202 N.C. 581, 163 S. E. 554, 555, the court ordered the defendant into custody during the trial. This court said: "The conduct of the defendant called for drastic action. His continued absence *305 impeded the trial. The judge states that he made `every possible effort to assure the defendant of able counsel and a fair trial, but the defendant did not seem to appreciate the effort or to respect the court.' It does not appear that the jury knew anything of the order or of the commitment of the defendant; the finding of the court is to the contrary. Under the circumstances, the order was within the exercise of legitimate power, and affords no sufficient ground for a new trial."
In Hood v. U. S., 8 Cir., 23 F.2d 472, 475, certiorari denied 277 U.S. 588, 48 S. Ct. 436, 72 L.Ed. 1002 (trial for a conspiracy to engage in transactions involving morphine) the court said: "The demand for the exclusion of witnesses and the committal of defendant Bowdry to the custody of the marshal were matters addressed to the sound discretion of the trial court, and we do not find that that discretion was abused". See Bishop's New Crim. Proc. Sec. 952a.
The defendant Smith in his brief relies upon State v. Hart, 186 N.C. 582, 120 S.E. 345; State v. McNeill, 231 N.C. 666, 58 S.E.2d 366; State v. Simpson, 233 N. C. 438, 64 S.E.2d 568; State v. Wagstaff, 235 N.C. 69, 68 S.E.2d 858. The facts in those cases are distinguishable. In the Hart Case the defendant in the presence of the jury was ordered into custody by the court. In the McNeill Case a defendant's witness immediately upon leaving the stand and in the presence of the jury was ordered into custody by the court. In the Simpson Case immediately after recess for lunch, some of the jurors being still in the courtroom, the court ordered the defendant and two of his witnesses into custody, and they were placed in jail. When the court reconvened, the jury being in the box, the defendant and his two witnesses were brought into the courtroom in custody of the sheriff. In Wagstaff's Case the 19 year old defendant was without counsel. The court ordered his father into custody in the presence of the jury, and removed from the courtroomthe defendant needing the counsel of his father, and his father being a probable witness for his son.
"In the absence of constitutional or statutory provisions to the contrary, the general rule is that the inherent power of the court to insure itself of the presence of the accused during trial may, in its discretion, be exercised so as to order a person who has been at liberty on bail, into the custody of the sheriff during trial of the case * * *. It is not necessary for the court, in exercising its discretionary power to remand during trial, to file any reasons for such action; and if such order is made, it must be assumed, in the absence of a contrary showing, that the court acted in good faith and upon sufficient grounds." 6 Am.Jur., Bail and Recognizance, Sec. 101.
Just before the court recessed for the day 13 February, 1952 the court instructed the jury: "Please remember the instructions of the court not to discuss this case with anybody, and please do not read the newspapers. Don't let your wife tell you what is in them; just go right along, and form your own opinions. Keep your minds open, etc."
Before Smith was placed in custody it was already in evidence that a warrant had been issued in December 1948 against Smith for operating a lottery by the Municipal Court of Greensboro; that in spite of efforts to arrest him, he was not picked up until June 1949 in Fayetteville; that Smith had paid Black a bribe of $4,000or at least $1,000 and placed $3,000 in escrow when he went through with his agreementnot to testify against him in 1949 and in Wilmington; that in 1950 York had pleaded guilty, and taken the "rap" for Smith, at his request. Smith was placed in custody not in the presence of the jury, and in going to and from jail, while he was in custody, there was nothing to indicate he was in custody. Considering all the facts and circumstances the judge did not abuse his discretion in placing Smith in custody and in increasing his bond to $50,000, which Smith gave next daythe court in good faith and upon sufficient grounds deeming his act essential for the protection of society. This assignment of error by Smith is not upheld.
*306 The defendant Smith assigns as error No. 5 the refusal of the court to permit his counsel to make the concluding argument to the jury. Smith offered no evidence, but his four co-defendants testified for themselves, and introduced the evidence of a number of witnesses in their behalf. That gave the state the right to open and conclude the argument, and this assignment of error is untenable. State v. Robinson, 124 N.C. 801, 32 S.E. 494; State v. Raper, 203 N.C. 489, 166 S.E. 314; Hamilton v. Southern R. R. Co., 200 N.C. 543, 158 S.E. 75.

Assignments of Errors to the Charge.
Smith requested the court to give 17 prayers for instructions plus 4 additional prayers, covering seven pages in the Record; his four co-defendants requested none. Smith's assignment of error No. 6: "The trial judge erred in charging the jury on the law applicable to the testimony of accomplices, failing to give the requested instructions on this subject and on whether there was any corroborating evidence, and, if so, its legal significance." Paschal, Ferrell, Adams and Money assign as their Error No. 3: "Did the court err in charging the jury with reference to the testimony of the state's witnesses who were accomplices, and was there error in giving conflicting instructions on this aspect of the case?" Smith filed a brief with us, and his four co-defendants a separate joint brief. On these two assignments of error the argument is substantially the same in both briefs, and both briefs cite many times the same authorities. The state had five witnesses. All the defendants contend that of these five witnesses only York and Coble were accomplices. The testimony of York and Coble was offered by the state as substantive evidence. If they corroborated each other, it was only incidentally. None of the defendants requested that the court instruct the jury that any of the testimony of York or Coble be considered as corroborative evidence, nor did the court do so.
The court refused to give Smith's prayer No. 3 verbatim, but gave it substantially in his charge.
All the defendants assign as error the court's refusal to give Smith's prayer 4: "In order to constitute corroborating evidence, the jury must be satisfied beyond a reasonable doubt that the facts relied upon as corroborating evidence existed or have been proven beyond a reasonable doubt, the burden being upon the state, and unless the jury so find they cannot consider the evidence as corroborating, and therefore would reject the same. In other words, evidence is not corroborative unless it does actually corroborate." And also the court's refusal to give Smith's prayer for additional instruction as follows: "The court charges the jury that the testimony of one accomplice cannot be used to corroborate that of another. Under the facts of this case the court charges you cannot consider the testimony of York to corroborate the testimony of Coble, or the testimony of Coble to corroborate the testimony of York. The court charges you that York and Coble are accomplices and you cannot consider the evidence of York to corroborate that of Coble, or Coble's testimony to corroborate that of York. Evidence of a number of accomplices needs the same amount of corroboration as that of one accomplice."
Prayer 4 is taken from the charge in State v. Ashburn, supra. Ashburn excepted to this part of the charge, saying he made no such contention. The court said: "If the defendant made no such contention, he should have called the court's attention to it, so that the correction could be made at the time." [187 N.C. 717, 122 S.E. 837.] The court did not lay this part of the charge down as a rule of law. Suffice it to say that the court in its charge in this case substantially followed the law laid down in the Ashburn case, relating to the testimony of an accomplice repeating many expressions there verbatim; and also following the law on the same subject expressed in State v. Williams, 185 N.C. 643, 116 S.E. 570; State v. Kelly, 216 N.C. 627, 6 S.E.2d 533. The exception to the refusal to give Prayer 4 is not sustained. The four additional prayers were taken apparently from 22 C.J.S. Criminal Law, § 812, p. 1408, where it is said: "The general rule is that the testimony of *307 one accomplice cannot be accepted as sufficient corroboration of the testimony of another; and hence, there can be no conviction on the testimony of accomplices alone, no matter how many there may be, if their testimony is not corroborated by evidence apart from accomplice testimony." This statement of the law in C.J.S. is at variance with our decisions. State v. Gore, supra. The refusal of the court to give these four additional prayers was not error.
The court did not give Prayers 5 and 6 verbatim, but it did give them substantially in its charge, and in accordance with our decisions.
All the defendants assign as error that part of the court's charge between the letters G and H, and covering about two pages of the Record pp. 283, 284 and 285, relating to the credibility of the testimony of accomplices in lieu of giving Smith's prayers for instruction on that subject, and particularly to this sentence: "The evidence of an accomplice is undoubtedly competent, and may be acted on by the jury as a warrant to convictalthough entirely supported." The two sentences in the charge immediately before this sentence, this sentence, and the three sentences immediately thereafter were Smith's prayer for instructions No. 2 given verbatim except supported for unsupported. Two of these last three sentences are: "The court instructs you that you may convict on the unsupported testimony of an accomplice, but that it is dangerous, etc. * * *. Before the defendants can be convicted upon the unsupported testimony of an accomplice, etc." Reading the charge as a whole the use of the word "supported" instead of "unsupported" was a lapsus linguae, or as the philosophers say "heterophemy". It could not have mislead the jury, and cannot be held material prejudicial error. State v. Truelove, 224 N.C. 147, 29 S.E.2d 460. The charge is to be construed contextually, and not by detaching a sentence or clause from its appropriate setting. State v. Utley, 223 N.C. 39, 25 S.E.2d 195.
That portion of the charge between the letters G and H is in conformity with State v. Williams, supra; State v. Ashburn, supra; and State v. Kelly, supra. The assignments of error thereto are not sustained.
All the defendants assign as error that later on in the charge the court gave the law in respect to the credibility of witnesses generally, and this was in conflict with the charge previously given as to the testimony of accomplices and was misleading and inconsistent. The defendants offered the testimony of 36 witnesses besides testifying themselves. This part of the charge as to witnesses' credibility generally comes over six pages in the Record after that on the credibility of accomplices. At the close of the court's charge, counsel for Smith stated to the court: "In the solicitor's closing argument he made reference that the defendants' testimony should be scrutinized, which was correct, but he likewise said that only York's and Coble's testimony should be scrutinized. We think your Honor should tell the jury that the same test of scrutinizing the testimony of the defendants would not be applied to the testimony of York and Coble, since they are accomplices." The court immediately added this addition to its charge: "Gentlemen of the jury, the court has given you the rule with reference to the caution and scrutiny that you should consider the evidence of accomplices. It has also given you the rule that you should apply to the consideration of the evidence of the defendants offered by them personally. I don't think that the courtI think I've gone into that fully enough so that you gentlemen will understand what the rule is and I will not at this time repeat it." Reading the charge as a whole there was no inconsistency, and these assignments of error are untenable. We have considered carefully all the other assignments of error under Smith's assignment of error No. 6 and under Paschal, Ferrell, Adams and Money's assignment of error No. 3, and they are not upheld.
Smith assigns as error No. 7 "The trial judge erred in refusing to give the jury the defendant Smith's written prayers for instructions on the question of agency as it related to the conspiracy count;" and assigns as error No. 8 "The trial judge failed to give the jury adequate and correct instructions on the conspiracy count." Paschal, *308 Ferrell, Adams and Money assign as error No. 2 "The trial judge failed to give the jury adequate and correct instructions on the conspiracy count." On these assignments of error the argument in the brief of Smith and in the brief of his four codefendants is substantially the same with many of the same authorities cited. All the defendants contend that the court's definition of "conspiracy" was fatally defective. The court summarized the first count in the indictment and said: "Conspiracy being an agreement to do an unlawful thing or an agreement to do a lawful thing in an unlawful manner or, more shortly, an unlawful agreement." In State v. Davenport, 227 N.C. 475, at page 493 et seq., 42 S.E.2d 686, 699, it is said: "`A conspiracy is the unlawful concurrence of two or more persons in a wicked schemethe combination or agreement to do an unlawful thing or to do a lawful thing in an unlawful way or by unlawful means.' (Citing authorities.)" The court said further in its charge p. 286 of the Record: "The jury cannot find one defendant alone guilty, because it is necessary that at least two of the defendants combine in order to form a conspiracy." None of the defendants requested a fuller definition of conspiracy. While the court's definition is meager, it is sufficient. The defendants further contend that Count One charges that Smith conspired with his four co-defendants; that there is no evidence that he did so; that, if there was a conspiracy, he conspired through his agents; and there is a fatal variance between allegata and probata. This is set forth in Smith's prayers 8 and 9. There is plenary evidence that Smith conspired directly with all of his four co-defendants. Smith's assignments of errors Nos. 7 and 8 and the police officer defendants assignment of error No. 2 are untenable, when the charge is read, and considered as a whole.
Smith assigns as error No. 9 "The trial judge did not comply with the requirements of G.S. § 1-180 in that he failed to declare and explain to the jury the law arising on the evidence given in the case with respect to any of the counts in the indictment". Paschal, Ferrell, Adams and Money assign as their error No. 4 the same as Smith assigns as his error No. 9, and further that the court failed to give equal stress to the contentions of the state and the defendants. The court in its charge stated it had taken longer to give a summary of the state's evidence than the defendants', but they were to attach no significance to that. He gave equal stress to the contentions of the state and the defendants. This was not error. State v. Anderson, 228 N.C. 720, 47 S.E.2d 1. The court in its charge covered adequately the evidence and contentions of the state and the five defendants. On Count One the court charged as follows: "On count one of the bill of indictment, that is, the one that refers to the alleged conspiracy between Smith and the four policemen, the jury may return a verdict of guilty as to any two or more of the defendants or may return a verdict of not guilty as to one or all of the defendants. The jury cannot find one defendant alone guilty, because it is necessary that at least two of the defendants combine in order to form a conspiracy. So the verdict of the jury may be guilty as to any two or more or not guilty as to one or more or all, as the jury may find and are satisfied from the evidence beyond a reasonable doubt, the burden being upon the state. The defendant Smith cannot be convicted upon the first count unless one or more of the other defendants are likewise convicted."
On counts two to nineteen in the indictment, both inclusive, the court gave as its charge Smith's prayers for instructions on those counts verbatim with a few slight, immaterial variationsbeing 9 prayers. On counts two and eleven the court charged as follows: "The jury is instructed that the defendant Smith cannot be convicted on count two in the bill of indictment of offering a bribe of one hundred dollars directly or through his agents to R. L. Paschal unless the defendant R. L. Paschal is convicted on count 11 in the bill of indictment of receiving said bribe." An identical charge was given on counts three and twelve, four and thirteen, five and fourteen, six and fifteen, seven and sixteen, eight and seventeen, nine and eighteen, ten and nineteen as those counts applied to Paschal, Ferrell, Adams and Money. The court then *309 charged: "All of which is to say, gentlemen of the jury, that these counts are interwoven and that in effect that, before you can find Smith guilty of giving a bribe to Paschal, you've got to find that he did it, and find it beyond a reasonable doubt, and you've likewise got to find that Paschal received and find that beyond a reasonable doubt. You gentlemen will understand that in giving you those last instructions which I have just read to you that they are intended as instructions of the court but are not intended to be full. That is, gentlemen of the jury, when I said that Smith couldn't be convicted on a certain charge unless the officer affected in that particular charge was also convicted of receiving a bribe, I mean by that, gentlemen of the jury, of receiving a bribe as I have earlier defined that for you, receiving a bribe for the purpose of influencing his official conduct as a member of the city police force, of the City of Greensboro * * *." The court then charged presumption of innocence and added: "The state is required to overcome that presumption and convince you not beyond all or every or any possible doubt but beyond a reasonable doubt that the defendants or some of them are guilty before the defendants or any of them can be convicted." The four police officer defendants say in their brief "this placed the defendant Smith on the coattails of the defendant policemen, and while this may have been a correct statement of law, if his Honor had left it without further elaboration serious prejudicial error against the four defendant policemen occurred when his Honor (1) told the jury that a conviction might follow on the conspiracy count if any two of the defendants should be found guilty, and (2) instructed the jury with reference to all of the charges that the state was required to convince them `that the defendants or some of them are guilty before the defendants or any of them can be convicted.'" The part above in (1) refers to Count One, and precedes the part of the charge as to Count Two to Nineteen, both inclusive. The part in (2) follows after the charge on presumption of innocence. Reading the charge as a whole no error appears. If the four police officer defendants were prejudiced by being placed on Smith's coattails, it is not for them to complain, for their connection with Smith in his lottery operations was of their free will and choice. This assignment of error is not sustained. Certainly Smith cannot complain of the charge on Counts Two to Nineteen, both inclusive. The four policemen defendants further assign as error that "on Counts 12, 16 and 18 the court neglected to mention these counts specifically in the partial recapitulation of the evidence." The court in its charge, while not referring to the numbers of the counts, did recapitulate the evidence on those counts; on count 12 p. 270 of the Record; on count 16 p. 274 of the Record; and on count 18 pp. 279 and 280 of the Record. A careful reading and study of the charge as a whole shows that while it is not as detailed as might be desired, and as we approve, yet it substantially complies with the requirements of G.S. § 1-180. It was not prejudicial to the defendants, or any of them. Smith's assignment of error No. 9, and his co-defendant's assignment of error No. 4, are untenable.
The Record consists of 351 pages, the briefs of the state and of the defendants of 128 pages. After a meticulous consideration of all the exceptions brought forward in the appeals of Smith, Paschal, Ferrell, Adams and Money, as well as the entire Record, including the charge of the trial judge, we reach the conclusion that there was no prejudicial error in the trial to justify a new trial for the defendants, or any of them, and that the judgments below must be affirmed.
The evidence in this case of the guilt of all five defendants is overwhelming, and discloses a shocking state of affairs. In one of the most cultured and progressive cities of our state, George Smith operated for ten years or more vast lotteries, taking in for years as banker $4,000 a day, five days to the week, after the commissions received by his writers and pick-up men. Paschal, Ferrell, Adams and Money, sworn police officers of the city, conspired with Smith protecting him and annihilating opposition, so as to make Smith the "kingpin," and give him a monopoly. These policemen, derelict *310 in their duty and faithless to their trust, cannot justly complain that they "had two strikes on them" when they were tried with Smith, because when they entered into the unlawful conspiracy with Smith they placed their liberty in his keeping. State v. Gibson, 233 N.C. 691, 65 S.E.2d 508.
No Error.