ELMORE, Judge.
 

 *652
 
 Scotty J. Garrett (defendant) was found guilty of conspiracy to sell methamphetamine, possession with intent to sell or deliver methamphetamine, and possession of drug paraphernalia. On appeal, defendant argues that the trial court erred in denying his motion to dismiss the charges against him. Because the State failed to present substantial evidence of constructive possession, we reverse defendant's conviction for possession with intent to sell or deliver methamphetamine. We leave defendant's two remaining convictions undisturbed and remand for resentencing in 12 CRS 050697.
 

 I. Background
 

 The State's evidence at trial tended to show the following: On 23 August 2012, Captain Coy Phillips of the Madison County Sheriff's Department arranged for a controlled drug buy in the town of Marshall. After receiving complaints of drug activity in the area, Captain Phillips contacted two paid confidential informants to purchase one gram of methamphetamine from Brian Fisher, an alleged dealer known by the informants. The sheriff's department provided the informants with an undercover vehicle equipped with audio and video surveillance. After meeting with Captain Phillips and Agent Mark Davis to obtain the "buy money," the informants arranged to meet Fisher at his residence.
 

 Meanwhile, Fisher was making plans to purchase methamphetamine for himself. Before the informants arrived, Fisher called defendant and asked if he had any methamphetamine for sale. According to Fisher, defendant said that he had "half a gram." At some point thereafter, Fisher called one of the informants for a ride to defendant's residence. The informants asked Fisher for a gram in exchange, to which Fisher responded, "Well, I ain't got nothing. You'll have to get it from [defendant] when we get there." The informants then picked up Fisher in the undercover vehicle and proceeded toward defendant's residence.
 

 Defendant met Fisher and the informants at the bottom of his driveway, where Fisher asked defendant for the methamphetamine. Defendant began fumbling around in his pockets but said he "didn't have any," he was "going to have to go get some." At that point, Matthew Adams, a friend of defendant and Fisher, arrived in a white Ford Explorer and pulled up behind the undercover vehicle in the driveway. Defendant and Fisher decided to ride with Adams in search of methamphetamine and rendezvous with the informants later in the night.
 

 *653
 
 Defendant eventually led Fisher and Adams to a trailer park in Buncombe County. Fisher testified that when they arrived, he and Adams gave money to defendant to buy the methamphetamine. Fisher stayed in the car while defendant went inside the trailer, followed by Adams. Fisher noticed other people going in and out of the trailer and estimated that there were "probably six or seven people there." About ten minutes later, Adams returned to the car with the methamphetamine and handed it to Fisher, who placed it in his sock. According to the testimony of Chief Deputy Michael Garrison, however, defendant told him during interrogation that he never bought methamphetamine that night. Rather, Fisher arranged the deal, Fisher "was actually the one that did the transaction, he's actually the one that gave her the money and she gave him the drugs."
 

 On the way back from Buncombe County, Fisher spoke with the informants on the phone and arranged to sell them some of the
 
 *783
 
 methamphetamine at Redmon Bridge. Fisher testified that
 

 on the way there [Adams]-me and [Adams] were up front, I was driving, I had secured the methamphetamines, because well one it was mine, it was my money, and two, I wanted to be able to get rid of it because I was in control of the vehicle. I had put it in my sock, got it out of my sock. Fumbling around trying to drive up Bear Creek wasn't easy. [Adams] held a cigarette cellophane, I dropped a little bit in there and I secured it and put it back in my boot, in my sock.
 

 When they arrived at the bridge, the informants approached the driver's side window and handed Fisher the "buy money" in exchange for the methamphetamine in the cellophane wrapper. Fisher testified that he then gave some of the "buy money" to Adams and defendant because "[defendant] was upset about-the best I recall he was upset because [one of the informants] owed him some money anyway on a prior deal, and [Adams] was owed because for the use [sic] of the vehicle and all that."
 

 Thereafter, the informants called Captain Phillips to confirm their purchase of the methamphetamine. Captain Phillips simultaneously radioed the patrolman to intercept the white Explorer. Officers found methamphetamine in Fisher's sock and a glass pipe in the rear floorboard where defendant had been sitting.
 

 On 6 May 2013, defendant was indicted on charges of felonious selling of methamphetamine, felony conspiracy to sell methamphetamine,
 
 *654
 
 possession of drug paraphernalia, and possession with intent to sell or deliver methamphetamine. A jury trial was held on 2 February 2015, before the Honorable Gary M. Gavenus in Madison County Superior Court. At the close of the evidence, defendant moved to dismiss all charges against him. The trial court denied defendant's motion, and the jury found defendant guilty on all charges except felonious selling of methamphetamine.
 

 The trial court sentenced defendant to fourteen to twenty-six months imprisonment for conspiracy to sell methamphetamine. Defendant's two other convictions, possession with intent to sell or deliver methamphetamine and possession of drug paraphernalia, were consolidated for judgment, and the trial court sentenced defendant to eight to nineteen months imprisonment, set to begin at the expiration of the sentence for conspiracy to sell methamphetamine. Defendant timely appeals, arguing that the trial court erred in denying his motion to dismiss.
 

 II. Discussion
 

 "This Court reviews the trial court's denial of a motion to dismiss
 
 de novo.
 
 "
 
 State v. Smith,
 

 186 N.C.App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007). " 'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' "
 
 State v. Fritsch,
 

 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (quoting
 
 State v. Barnes,
 

 334 N.C. 67
 
 , 75,
 
 430 S.E.2d 914
 
 , 918 (1993) ),
 
 cert. denied,
 

 531 U.S. 890
 
 ,
 
 121 S.Ct. 213
 
 ,
 
 148 L.Ed.2d 150
 
 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 State v. Smith,
 

 300 N.C. 71
 
 , 78-79,
 
 265 S.E.2d 164
 
 , 169 (1980). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor."
 
 State v. Rose,
 

 339 N.C. 172
 
 , 192,
 
 451 S.E.2d 211
 
 , 223 (1994),
 
 cert. denied,
 

 515 U.S. 1135
 
 ,
 
 115 S.Ct. 2565
 
 ,
 
 132 L.Ed.2d 818
 
 (1995).
 

 A. Possession with Intent to Sell or Deliver Methamphetamine
 

 First, defendant argues that the trial court erred in denying his motion to dismiss the charge of possession with intent to sell or deliver methamphetamine because the State failed to present substantial evidence of constructive possession.
 

 To sustain a conviction under N.C. Gen.Stat. § 90-95(a)(1), the State must prove that the defendant (1) possessed a controlled substance
 
 *655
 
 (2) with the intent to manufacture,
 
 *784
 
 sell, or distribute it. N.C. Gen.Stat. § 90-95(a)(1) (2015) ;
 
 State v. Diaz,
 

 155 N.C.App. 307
 
 , 319,
 
 575 S.E.2d 523
 
 , 531 (2002) (citing
 
 State v. Carr,
 

 122 N.C.App. 369
 
 , 372,
 
 470 S.E.2d 70
 
 , 72-73 (1996) ). "Possession" may be either actual or constructive.
 
 State v. Alston,
 

 131 N.C.App. 514
 
 , 519,
 
 508 S.E.2d 315
 
 , 318 (1998),
 
 superseded in part on other grounds by statute as stated in
 

 State v. Gaither,
 

 161 N.C.App. 96
 
 , 103,
 
 587 S.E.2d 505
 
 , 510 (2003),
 
 disc. review denied,
 

 358 N.C. 157
 
 ,
 
 593 S.E.2d 83
 
 (2004). A defendant has constructive possession of contraband where, "while not having actual possession, he has the intent and capability to maintain control and dominion over" it.
 
 State v. Beaver,
 

 317 N.C. 643
 
 , 648,
 
 346 S.E.2d 476
 
 , 480 (1986) (citing
 
 State v. Williams,
 

 307 N.C. 452
 
 , 455,
 
 298 S.E.2d 372
 
 , 374 (1983) ). "The defendant may have the power to control either alone or jointly with others."
 
 State v. Miller,
 

 363 N.C. 96
 
 , 99,
 
 678 S.E.2d 592
 
 , 594 (2009) (citing
 
 State v. Fuqua,
 

 234 N.C. 168
 
 , 170-71,
 
 66 S.E.2d 667
 
 , 668 (1951) ). To establish constructive possession, it is not necessary to show that the defendant has exclusive control of the premises where the contraband is found.
 
 State v. McLaurin,
 

 320 N.C. 143
 
 , 146,
 
 357 S.E.2d 636
 
 , 638 (1987). But unless the defendant has such exclusive control, "the State must show other incriminating circumstances sufficient for the jury to find a defendant had constructive possession."
 
 Miller,
 

 363 N.C. at 99
 
 ,
 
 678 S.E.2d at
 
 594 (citing
 
 State v. Matias,
 

 354 N.C. 549
 
 , 552,
 
 556 S.E.2d 269
 
 , 271 (2001) ).
 

 Whether sufficient incriminating circumstances exist to support a finding of constructive possession is a fact-specific inquiry dependent upon the totality of the circumstances in each case.
 
 Id.;
 

 State v. James,
 

 81 N.C.App. 91
 
 , 93,
 
 344 S.E.2d 77
 
 , 79 (1986). Although no single factor controls, our courts have considered,
 
 inter alia,
 
 the defendant's (1) proximity to the contraband,
 
 Miller,
 

 363 N.C. at 100
 
 ,
 
 678 S.E.2d at 595
 
 , though mere presence is not enough,
 
 State v. Minor,
 

 290 N.C. 68
 
 , 75,
 
 224 S.E.2d 180
 
 , 185 (1976), (2) ownership or control of the place where the contraband was found,
 
 State v. Wiggins,
 

 185 N.C.App. 376
 
 , 385-88,
 
 648 S.E.2d 865
 
 , 872-73 (2007), (3) opportunity to dispose of the contraband in the place it was found,
 
 State v. Butler,
 

 356 N.C. 141
 
 , 148,
 
 567 S.E.2d 137
 
 , 141 (2002), and (4) suspicious or unusual behavior,
 

 id.
 

 at 147-48
 
 ,
 
 567 S.E.2d at
 
 141 ;
 
 State v. Barron,
 

 202 N.C.App. 686
 
 , 692,
 
 690 S.E.2d 22
 
 , 27 (2010).
 

 This case does not fit neatly into a typical constructive possession fact pattern, where the contraband is not found on the defendant's person but the defendant's exclusive control of the area or other "incriminating circumstances" establishes a link between the defendant and the contraband. The State's evidence here shows that at nearly all relevant
 
 *656
 
 times, Fisher and Adams were in actual possession of the methamphetamine. Adams emerged from the trailer with the methamphetamine and gave it to Fisher in the vehicle. Fisher secured the methamphetamine in his sock and, with Adams' help, transferred some of the methamphetamine to the cellophane wrapper. At the bridge, Fisher handed the methamphetamine to the informants. And after the traffic stop, police found the remaining methamphetamine in Fisher's sock.
 

 As to defendant, the State's constructive possession theory relies on circumstantial evidence surrounding the transaction inside the trailer in Buncombe County. Fisher testified that defendant led Fisher and Adams to the trailer to purchase methamphetamine. Although defendant told Chief Deputy Garrison that Fisher actually arranged the deal and purchased the drugs, Fisher testified that he stayed in the vehicle while defendant and Adams went inside the trailer. Resolving this contradiction in favor of the State, the evidence shows that Fisher and Adams provided the money to purchase the drugs, that defendant entered the trailer with their money, followed by Adams, that other people were going in and out of the trailer, and that ten minutes later, Adams returned from the trailer with the methamphetamine and handed it to Fisher. Even in the light most favorable to the State, we conclude that no reasonable mind would accept these facts as adequate to support the conclusion that defendant had both the intent and capability to maintain control and dominion over the drugs inside the trailer. Because the possession
 
 *785
 
 element of N.C. Gen.Stat. § 90-95(a)(1) is not supported by substantial evidence, the trial court erred in denying defendant's motion to dismiss the charge of possession with intent to sell or deliver.
 

 B. Conspiracy to Sell Methamphetamine
 

 Second, defendant argues that the trial court erred in denying his motion to dismiss the charge of conspiracy to sell methamphetamine based on insufficient evidence.
 

 "A criminal conspiracy is an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means."
 
 State v. Bindyke,
 

 288 N.C. 608
 
 , 615,
 
 220 S.E.2d 521
 
 , 526 (1975) (citing
 
 State v. Littlejohn,
 

 264 N.C. 571
 
 ,
 
 142 S.E.2d 132
 
 (1965) ). A conspiracy does not require proof of an express agreement; rather, "proof of circumstances which point to a mutual implied understanding to commit the unlawful act is sufficient to prove conspiracy."
 
 State v. Howell,
 

 169 N.C.App. 741
 
 , 748,
 
 611 S.E.2d 200
 
 , 205 (2005) (citing
 
 State v. Smith,
 

 237 N.C. 1
 
 , 16-17,
 
 74 S.E.2d 291
 
 , 301-02 (1953) ). "The crime is complete when the agreement is made; no overt act in furtherance of the
 
 *657
 
 agreement is required."
 

 Id.
 

 (citing
 
 State v. Gallimore,
 

 272 N.C. 528
 
 , 532,
 
 158 S.E.2d 505
 
 , 508 (1968) ).
 

 Here, there is substantial evidence of an implied understanding among defendant, Fisher, and Adams to sell methamphetamine to the informants. Captain Phillips instructed the informants to buy a gram of methamphetamine from Fisher. Fisher testified that the informants picked him up and drove to defendant's house, where Fisher asked defendant for methamphetamine. Defendant said he "didn't have any," but he "could get some." One of the informants also asked defendant, "How much can you get me? Can you get me a gram?" Defendant responded, "Yes." Eventually, defendant led Fisher and Adams to the trailer park in Buncombe County, where Fisher and Adams supplied the money to purchase methamphetamine. We conclude, therefore, that the trial court did not err in denying defendant's motion to dismiss the conspiracy charge.
 

 C. Possession of Drug Paraphernalia
 

 Third, defendant argues that the trial court erred in denying his motion to dismiss the charge of possession of drug paraphernalia based on insufficient evidence.
 

 Pursuant to N.C. Gen.Stat. § 90-113.22(a) (2015), "[i]t is unlawful for any person to knowingly use, or to possess with intent to use, drug paraphernalia ... to inject, inhale, or otherwise introduce into the body a controlled substance...." The offense requires proof that the defendant possessed drug paraphernalia and had "the intent to use the [drug paraphernalia] in connection with the controlled substance."
 
 State v. Hedgecoe,
 

 106 N.C.App. 157
 
 , 164,
 
 415 S.E.2d 777
 
 , 781 (1992).
 

 Although defendant did not have exclusive control over the interior of the car where the glass pipe was found, the State presented sufficient evidence of other incriminating circumstances to support a finding of constructive possession. The arresting officer testified that, when he approached the vehicle, defendant was sitting in the back seat and did not immediately show his hands at the officer's request. Police subsequently searched the vehicle and found a glass pipe on the rear floorboard of the seat where defendant was sitting. Defendant admitted that he smoked methamphetamine out of the pipe with Adams and Fisher while they were in the car. Furthermore, Fisher testified that the pipe they used belonged to defendant and that defendant had been carrying it in his pocket. Based on this evidence, we conclude that the trial court did not err in denying defendant's motion to dismiss the charge of possession of drug paraphernalia.
 

 *658
 

 III. Conclusion
 

 The trial court erred in denying defendant's motion to dismiss the charge of possession with intent to sell or deliver because there was insufficient evidence that defendant had constructive possession of the methamphetamine. We reverse defendant's conviction for possession with intent to sell or deliver methamphetamine in 12 CRS 050698. We leave defendant's convictions for conspiracy
 
 *786
 
 to sell methamphetamine in 12 CRS 050694 and possession of drug paraphernalia in 12 CRS 050697 undisturbed. However, because defendant's convictions for possession with intent to sell or deliver methamphetamine and possession of drug paraphernalia were consolidated for judgment and commitment, we must also remand 12 CRS 050697 for new sentencing.
 

 REVERSED IN PART; NO ERROR IN PART; REMANDED FOR NEW SENTENCING.
 

 Judges CALABRIA and ZACHARY concur.